**In re Edward F. WILKINSON, Britta A. Wilkinson, Debtors.**

**Bankruptcy No. 95–15524–AM.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

May 24, 1996.

Neil Spencer Welles, Robert A. Ades & Associates, P.C., Springfield, Virginia, for debtors.

Mitchell Komaroff, Madigan & Scott, Inc., Springfield, Virginia, for Dale Service Corp.

Robert G. Mayer, Mayer & Scanlan, P.C., Fairfax, Virginia, for chapter 7 trustee.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

Before the court is the motion of one of the debtors to avoid an execution lien obtained by Dale Service Corp. ("Dale") and to require Dale to disgorge $806.71 in garnished wages it received as a result of its lien. A hearing was held on March 12, 1996, at which the parties presented oral argument. The dispositive issues are whether, under either § 522(f) or § 522(h), Bankruptcy Code, the debtor may recover funds that had been withheld from his wages more than 90 days prior to his chapter 7 filing but where the order of payment directing the employer to pay those funds to the judgment creditor was entered within 90 days of the chapter 7 filing.

For the reasons stated in this opinion, the court concludes that the debtor cannot suc-

ceed under the lien avoidance provisions of § 522(f), Bankruptcy Code, because he no longer had an interest in the garnished funds on the date he filed his petition. He also cannot succeed by stepping into the trustee's shoes under § 522(h) and recovering the funds paid over to the judgment creditor as a preference, because the judgment creditor's execution lien became fixed outside the 90-day preference period, and the payment within the preference period did not enable the creditor to obtain more than it would in a chapter 7 liquidation.

### Facts

The parties have stipulated to most of the relevant facts. On July 8, 1992, Dale obtained a judgment against debtor Edward F. Wilkinson in the General District Court for Prince William County, Virginia. Dale caused a garnishment summons and a writ of fieri facias ("fi.fa.") to be served upon the debtor's employer, Fairfax County Public Schools, on July 11, 1995. The employer submitted an answer on August 24, 1995 stating that $806.71 had been withheld from the debtor's wages.[1] On October 11, 1995, an order of payment was entered in the Prince William County General District Court. Dale was paid, and its judgment satisfied, on October 23, 1995.

The debtor and his wife—Britta A. Wilkinson—filed a joint voluntary chapter 7 petition in this court on December 12, 1995. Dale Service Corporation was listed as an unsecured creditor with an "unliquidated" $807 claim arising from a 1989 sewer bill.[2] With their petition, the debtors filed a copy of a homestead deed for personal property dated December 4, 1995, which claimed the garnished wages as exempt,[3] and they also

---

1. In his pleadings, the debtor has asserted that—in light of the wage cycle used by the school system—the entirety of the $806.71 was withheld from the July 31, 1995 paycheck and was for work performed at least in part before July 11, 1995.

2. Since the debt had been reduced to judgment, to characterize it as "unliquidated" was plainly improper. Indeed, every debt listed on the debtors' schedules is described as "unliquidated."

3. The homestead exemption is one of several exemptions available to debtors in Virginia. The

homestead exemption permits a "householder" (defined as any resident of Virginia) to exempt up to $5,000 worth of real property by filing an instrument known as a homestead deed with the clerk of the circuit court for the city or county where the property is located. §§ 34–1, 34–4 and 34–6, Va.Code Ann. The exemption amount is increased by $500 for each dependent a householder supports and by an additional $2,000 if the householder is a disabled veteran. §§ 34–4, 34–4.1, Va.Code Ann. To the extent the homestead exemption is not claimed in real estate, the debtor may claim the exemption in personal

listed the wages as exempt on their Schedule C ("Property Claimed As Exempt"). The homestead deed was filed with the Prince William County Circuit Court on December 18, 1995. No objection was filed to the debtors' claims of exemption. The trustee filed a report of no distribution on January 22, 1996, and the debtors received their discharge on April 3, 1996.

### Conclusions of Law

This court has jurisdiction over this controversy under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference entered by the United States District Court for the Eastern District of Virginia on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F) and (K). Venue is proper in this District under 28 U.S.C. § 1409(a).

As an initial matter, the court noted, and brought to the parties' attention, that while a debtor may seek lien avoidance under 11 U.S.C. § 522(f) by motion, a debtor's action under § 522(h) to avoid a preference must be brought as an adversary proceeding. Fed.R.Bankr.P. 4003(d) and 7001(2); *In re Shorts*, 63 B.R. 2 (Bankr.D.D.C.1985). The judgment creditor, because of the small sum of money involved, and a desire not to incur additional attorney fees by having to prepare and file additional pleadings and to return to court another day, expressly waived on the record the requirement that the relief sought under § 522(h) be brought as an adversary proceeding rather than a contested matter. The more formal requirements of an adversary proceeding are intended in large measure to protect the defendant, and the court concludes that, where no harm will result to the administration of justice, the defendant can waive those protections and consent to the issues being adjudicated under the less formal procedures applicable to contested matters. In the case presently before the court, the total legal fees may well already approach the amount in controversy. Accordingly, the court concludes that to bifurcate the proceedings and to require that the

§ 522(h) action be brought separately as an adversary proceeding—when it seeks precisely the same relief as the § 522(f) motion—would not be in the best interest of justice or the speedy and economical resolution of disputes. For that reason, the court in this instance will waive the requirement of Fed.R.Bankr.P. 7001 that a debtor's preference action under § 522(h) be brought as an adversary proceeding.

### A. Garnishment under Virginia law

While the avoidance provisions of § 522(f) and (h), Bankruptcy Code, are peculiar to bankruptcy law, at the very heart of this controversy lies a wage garnishment, a creature of state law. The nature of a garnishment under Virginia law has been well summarized in a recent Fourth Circuit opinion. Since I cannot improve on it, I will simply quote it:

> Under Virginia law, a money judgment is enforced by the issuance of a writ of fieri facias and delivery of the writ to a "proper officer" of the court for enforcement. See Va.Code Ann. § 8.01–466 (1992). The writ commands the officer "to make the money therein mentioned out of the goods and chattels of the person against whom the judgment is." Va.Code Ann. § 8.01–474 (1992). When the property is not subject to levy pursuant to the writ of fieri facias, it nevertheless becomes subject to a lien upon delivery of the writ to the sheriff or other officer. Va.Code Ann. § 8.01–501 (1992). And when the property is in the hands of a third person, the lien of execution may be enforced through a garnishment proceeding. See Va.Code Ann. § 8.01–511 (1992).

> Under Virginia law, a garnishment proceeding is a separate proceeding in which the judgment creditor enforces the "lien of his execution" against property or contractual rights of the judgment debtor which are in the hands of a third person, the garnishee. *Lynch v. Johnson,* 196 Va. 516, 84 S.E.2d 419, 421 (1954); see also *Butler v. Butler,* 219 Va. 164, 247 S.E.2d 353, 354

---

property by filing a homestead deed in the city or county where the debtor resides. §§ 34–13 and 34–14, Va.Code Ann. In the case of a debtor

who has filed a chapter 7 petition, the homestead deed must be filed not later than five days after the meeting of creditors. § 34–17, Va.Code Ann.

(1978). The summons issued in a garnishment proceeding "warns" the garnishee not to pay the judgment debtor's money to the judgment debtor, with the sanction that if the garnishee were to do so, it would become personally liable for the amount paid. *Lynch*, 84 S.E.2d at 421. Thus, "the creditor 'does not acquire a clear and full lien upon the specific property in the garnishee's possession, but only such a lien as gives him the right to hold the garnishee personally liable for it or its value.'" *Id.* at 421–22. In other words, by act of garnishment, the judgment creditor does not replace the judgment debtor as owner of the property, but merely has the right to hold the garnishee liable for the value of that property. * * *

The garnishee can escape all garnishment liability, however, by surrendering the funds to the court for its proper disposition. See *In re Lamm*, 47 B.R. 364, 368 (E.D.Va.1984). The garnishee is required to respond to the garnishment summons by confessing the amount owed to the judgment debtor or by denying it has any property of the judgment debtor. It may also pay such monies into court as it confesses. If liability or the amount confessed is disputed, the court determines whether the garnishee holds property belonging to the judgment debtor and the property's value.

*United States f/u/o Global Bldg. Supply, Inc. v. Harkins Builders, Inc.* 45 F.3d 830, 833–34 (4th Cir.1995). The reach of a garnishment extends not only to all funds that the debtor is entitled to receive from the garnishee on the date the garnishment summons is served, but also to any funds to which the debtor becomes entitled prior to the *return* date of the garnishment summons. § 8.01–501, Va. Code Ann. The return date cannot be more than 90 days after issuance of the summons. § 8.01–514, Va.Code Ann. Wage garnishments, except for enforcement of support or tax obligations, are limited to 25% of disposable earnings. § 34–29, Va.Code Ann.

■ An execution lien in Virginia, however, differs from a consensual lien in one

important respect: it can be trumped, even after it fixes, by the debtor's assertion of his or her exemption rights. § 34–17, Va.Code Ann. (property claimed exempt under homestead exemption "may be set apart at any time before it is subjected by sale under creditor process, or, if such creditor process does not require sale of the property, before it is turned over to the creditors"). In the case of a garnishment, "a homestead deed may be filed at any time before a court ... orders the payment of money by the garnishees to the judgment creditor at a hearing of the garnishment proceeding." *Wilson v. Virginia National Bank*, 214 Va. 14, 15, 196 S.E.2d 920, 921 (1973).[4]

**B. Debtor's lien avoidance under § 522(f)**

■ The first issue is whether the debtor may avoid the fixing of Dale's execution lien under § 522(f), Bankruptcy Code. That section provides, in pertinent part:

(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien *on an interest of the debtor in property* to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(A) a judicial lien ...

(emphasis added). Clearly, a number of the requirements for lien avoidance have been met in this case. The execution lien is unquestionably a judicial lien and its enforcement unquestionably impairs the exemption that the debtor would have been entitled to claim but for the lien. The dispute is whether the debtor had or has an interest in the wages withheld.

Both the debtor and Dale have cited to the decision of the United States Supreme Court in *Farrey v. Sanderfoot*, 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991). Dale contends that the debtor never acquired an "interest" in the garnished wages, since the execution lien fixed on the garnishable portion of the wages as soon as they were earned. The debtor, for his part, contends that the funds withheld were earned in whole

---

**4.** In the present case it is uncontested that the homestead deed was not recorded until Decem- ber 18, 1995—approximately two months *after* the entry of the order for payment.

or in part prior to the July 11, 1995 service of the garnishment summons. Consequently, the debtor asserts that he had an interest in the wages prior to the fixing of the lien and that the fixing of the lien may therefore be avoided, since it impairs the exemption to which he would have been entitled but for the lien.

There is insufficient evidence before the court to resolve exactly when the withheld wages were earned, beyond the uncontroverted fact that they were earned outside the 90–day preference period. In the context of the present case, however, the question of whether they were earned before or after the execution lien arose is a red herring. In this connection, the court considers both parties' reliance on *Farrey* to be misplaced. In *Farrey*, the debtor and his former wife had owned real property as joint tenants. The divorce decree simultaneously terminated the joint tenancy, awarded the property to the debtor, and granted the ex-wife a lien on the real property. The Supreme Court held that when the debtor obtained his interest in the property, it was already subject to the judicial lien. Since the Court held that § 522(f)(1) "requires a debtor to have possessed an interest to which a lien attached, *before it attached*, to avoid the fixing of the lien on that interest," 500 U.S. at 301, 111 S.Ct. at 1831 (emphasis added), it concluded that the debtor could not use § 522(f) to avoid the lien granted his ex-wife.

■ *Farrey* simply does not speak to the situation currently before the court. In *Farrey*, the debtor still owned the real estate, albeit subject to the lien in favor of his former wife, when he filed for bankruptcy relief. Here, the debtor no longer had an interest in the withheld wages when he filed for bankruptcy relief, since they had been paid over to the judgment creditor more than six weeks earlier. Had the order for payment not yet been entered, however—in other words, had the bankruptcy filing intervened before the withheld wages were paid over to the judgment creditor—the result would have been very different. Even if the wages withheld were entirely earned after the execution lien arose, the debtor would nevertheless have had an "interest" in the

wages as they were earned that would entitle him to avoid the execution lien. *In re Johnson,* 53 B.R. 919 (Bankr.N.D.Ill.1985) (judgment debtor continues to have an interest in wages being withheld pursuant to a valid wage deduction proceeding until such time as a final deduction order is entered); *General Motors Acceptance Corporation v. Garcia (In re Garcia),* 155 B.R. 173, 175 (N.D.Ill. 1993) "[A]lthough the garnishment summons creates a lien on the debtor's wages, it does not divest the debtor of his or her interest in the wages ... [U]ntil the court enters the wage deduction order, the debtor maintains an interest in those wages"). This is particularly true in Virginia, since, as noted above, the funds withheld in obedience to the garnishment summons may be exempted up until an order for payment is entered. *Wilson, supra.* Accordingly, in the present case, the debtor had an interest in the garnished wages until October 11, 1995. Once the order of payment was entered October 11, however, the debtor's interest in the wages was extinguished.

■ It is the extinguishment of that interest that is fatal to the debtor's attempt to recoup the garnished wages under § 522(f). The term "interest of the debtor in property" can only be understood as referring to an interest of the debtor in property existing on the date of the bankruptcy filing, not an interest the debtor may have had sometime in the near or distant past. *Barzee v. Trammel (In re Trammel),* 63 B.R. 878, 882 (Bankr.E.D.Va.1986) (Bostetter, C.J.) (debtors could not avoid judgment lien against real estate under § 522(f) when they had sold property prior to filing bankruptcy petition); *In re May,* 33 B.R. 599 (Bankr.N.D.Ohio 1983) (handgun sold prior to bankruptcy not subject to lien avoidance); *In re Gibbs,* 39 B.R. 214 (Bankr.W.D.Ky.1984) (funds paid over to garnishment creditor 8 months prior to bankruptcy not subject to lien avoidance); *see, also, In re Vitullo,* 60 B.R. 822 (D.N.J. 1986) (judgment lien against real estate could not be avoided under § 522(f) where, even though debtors owned real estate on the date they filed their chapter 7 petition, they sold it before filing their lien avoidance motion).

Since the debtor had no interest in the withheld wages on the date he filed his petition, it follows that he cannot use § 522(f) to avoid the execution lien and thereby recapture the funds paid over to Dale.

## C. Debtor's preference action under § 522(h)

 Even though the debtor no longer, on the date he filed his bankruptcy petition, possessed an interest in the garnished funds so as to be able to avail himself of lien avoidance under § 522(f), Bankruptcy Code, there remains the question of whether the debtor is entitled, as he asserts, to recover the funds paid over to Dale as a preference. Ordinarily, the right to recover a preference belongs to the trustee and is asserted for the benefit of the bankruptcy estate. If the trustee pursues a preference, however, the debtor may—if the transfer was not voluntary, and the debtor did not conceal it—claim an exemption in any money or property recovered by the trustee. § 522(g), Bankruptcy Code. Moreover, if the trustee does not pursue the preference, the debtor can do so in the trustee's stead to the extent the debtor would be entitled to exempt the money or property recovered. Specifically:

> The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—
>
> (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title: and

> (2) the trustee does not attempt to avoid such transfer.

§ 522(h), Bankruptcy Code. In effect, § 522(h) allows the debtor to step into the trustee's shoes to recover a preferential payment or transfer, so long as the trustee has not pursued it, the payment or transfer was not voluntary, the debtor did not conceal the transfer or the property, and the debtor would be entitled to claim the property exempt had the transfer not occurred. It is undisputed that the trustee has not attempted to avoid the $806.71 payment to Dale. Thus, the debtor has standing to avoid the transfer, provided all the other requirements for avoidance are met. *In re Smith,* 45 B.R. 100, 106 (Bankr.E.D.Va.1984) (Shelley, J.).

 Generally, a transfer of property may be avoided as a preference if it was made on account of an antecedent debt within 90 days of the filing of the petition while the debtor was insolvent, thereby enabling the creditor to receive more than it would have received in a chapter 7 liquidation.[5] Specifically, § 547, Bankruptcy Code, states in pertinent part:

> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
> (A) on or within 90 days before the date of the filing of the petition; or
>
> (B) between 90 days and one year before the date of the filing of the peti-

---

5. There are a number of statutory defenses to a trustee's preference action. § 547(c), Bankruptcy Code. Since most of these address voluntary payments by the debtor or the creation of consensual security interests, they would not ordinarily be relevant in the context of a debtor's preference avoidance action, since the debtor is precluded from using the trustee's avoidance powers to avoid a voluntary transfer. § 522(g)(1)(A), Bankruptcy Code. However, the defense in § 547(c)(8), Bankruptcy Code, could apply to either voluntary or involuntary transfers. Essentially, a transfer cannot be avoided as a preference "if, in a case filed by an individual debtor whose debts are primarily consumer debts, the aggregate value of all property that constitutes or is affected by such transfer is less than $600." Since in the present case the value of the property transferred as a result of the execution lien exceeds $600, the potential defense is not applicable. In other cases, however, the existence of the § 547(c)(8) defense may effectively preclude a debtor from using § 522(h) to recover funds paid over to a judgment creditor as a result of garnishment.

tion, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more that such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debtor to the extent provided by the provisions of this title.

\* \* \* \* \* \*

(e)(3) For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

(f) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

There can be no dispute that the first two elements of an avoidable preference are present in this case. The garnished wages were paid to Dale for its benefit as a creditor and were paid on account of an antecedent debt it was owed by the debtor. There also appears to be no dispute that, whenever the "transfer" occurred—whether on July 11, 1995, as Dale asserts, or October 23, 1995, as the debtor asserts—the debtor was insolvent.[6] The disputed issues involve the final two preference elements: did the "transfer" occur within 90 days of the debtor's filing, and, if so, did it enable Dale to receive more than it would have received in a chapter 7 liquidation had the transfer not been made?

■ Since the debtor filed his chapter 7 petition on December 12, 1995, the 90–day preference period began to run on September 13, 1995. The question is when the relevant "transfer" occurred for the purposes of § 547. Pursuant to the definition set forth in § 101(54), Bankruptcy Code, a transfer is "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing or parting with property or with an interest in property." Given this broad defi-

nition, it is apparent that a completed garnishment involves two conceptually distinct transfers: the first, when the execution lien attaches to the debtor's interest in the garnished funds, and the second, when the funds are paid over to the judgment creditor.

■ There can be no question that an execution lien is a "transfer" for the purposes of § 547, Bankruptcy Code. *Canfield v. Simpson (In re Jones)*, 47 B.R. 786 (Bankr. E.D.Va.1985), citing *In re Rocky Mountain Ethanol Systems, Inc.*, 21 B.R. 707, 709 (Bankr.D.N.Mex.1981) ("[n]onconsensual transfers, such as executions or other liens obtained through judicial proceedings, fall within this definition [of 'transfer']"). Furthermore, in Virginia, "[f]or the purposes of bankruptcy, the judgment lien need not be absolute, unequivocal or irrevocable. It need only be superior to the rights of a subsequent judgment lien creditor, and in Virginia the lien by writ of fieri facias is such a lien." *In the Matter of Acorn Electric Supply, Inc.*, 348 F.Supp. 277, 281 (E.D.Va.1972), citing *Charron & Co. v. Boswell*, 18 Gratt. (59 Va.) 216 (1868). Consequently, in Virginia "the execution lien on intangibles is perfected for bankruptcy when the writ of fieri facias is delivered to the officer to be executed." *Acorn Electric*, 348 F.Supp. at 282.

■ However, an execution lien (like any other lien) cannot effect a transfer "until the debtor has acquired rights in the property transferred." § 547(e)(3), Bankruptcy Code. In the case of wages, this means that, although the employer may have been served with a garnishment summons, the execution lien does not attach—and thus a transfer does not occur—until the wages are actually earned. Thus, if wages withheld under garnishment process are *earned* within 90 days of the filing of the debtor's petition, the fixing of the execution lien on them may be avoided as a preference:

A writ of garnishment may well be a duly perfected lien on wages yet to be earned such that a creditor on a simple contract cannot acquire a judicial lien that is superi-

---

**6.** The debtors' Summary of Schedules filed with their petition reflect $8,411 in assets and $214,- 608.64 in liabilities.

or to the rights of the judgment creditor. Nonetheless, the avoidance powers under § 547(h) extend to the avoidance of transfers rather than the perfection of liens. Inasmuch as § 547(e)(3) establishes that a transfer does not occur until the debtor has rights in the collateral, the transfer of wages garnished pursuant to a writ of garnishment cannot occur until the judgment debtor has earned the wages garnished. Thus, *a payment of the garnishment attributable to wages earned by the debtor within ninety days of the filing of a bankruptcy petition is a preferential transfer to a judgment creditor.*

*Mayo v. United Services Automobile Association (In re Mayo)*, 19 B.R. 630, 632–633 (E.D.Va.1981) (MacKenzie, J.), quoting *In re Cox*, 10 B.R. 268 (Bankr.D.Md.1981) (emphasis added).[7] The wages garnished in *Mayo* and *Cox* were earned by the debtor within 90 days of filing the bankruptcy petition. In the present case, however, it is undisputed that the wages withheld under the garnishment and paid over to Dale were earned entirely outside the 90–day preference period. Accordingly, the transfer which occurred when the execution lien attached cannot be avoided as a preference.

This does not end the inquiry, however, for the employer's payment to Dale of the wages that had been withheld also plainly constitutes a "transfer" within the meaning of § 547, Bankruptcy Code. Since that transfer—whether it is deemed to have occurred on October 11, 1995, when the state court entered the order of payment, or on October 23, 1995, when the employer actually paid the withheld wages to Dale—occurred within 90 days prior to the debtor's bankruptcy, it is potentially avoidable as a preference.

Here, however, the improvement-of-position test of § 547(b)(5), Bankruptcy Code, comes into play. Generally, "a preference is a transfer * * * that enables a credi-

tor to receive more than the creditor would otherwise receive if, instead, the creditor were limited to his or her share of a distribution resulting from a Chapter 7 liquidation." *Smith v. Creative Financial Management (In re Virginia–Carolina Financial Corp.)*, 954 F.2d 193, 196 (4th Cir.1992). A fully-secured creditor, however, would, unless its lien were avoidable, be entitled in a chapter 7 liquidation to full payment on account of its lien. Accordingly, payment of that lien, even if it occurs within the preference period, does not improve the creditor's position, as required by § 547(b)(5), so long as the lien itself is not avoidable. *Lamm, supra,* at 369–370 ("A lien established more than ... 90 days ... prior to the filing of bankruptcy, is a lien not subject to avoidance by bankruptcy even though the enforcement, or payment or transfer of the monies occurs within ... 90 days ... of the filing of the bankruptcy petition"); *Acorn Electric, supra,* at 279 ("once a creditor's security is perfected, he stands in a different class than the general creditors and satisfaction of his debt will not permit him to receive a greater percentage than creditors of the same class.").

Consistent with the foregoing analysis, the reported cases in this Circuit have held that the date that the execution lien attaches is the operative "transfer" date for a § 547 analysis. *In re Lamm, supra; Walutes v. Baltimore Rigging Co.*, 390 F.2d 350 (4th Cir.1968). In *Lamm,* the District Court addressed the precise factual scenario that is currently before the court. The creditor in that case had obtained a judgment against the debtor on August 16, 1982. The writ of fi.fa. and garnishment summons were served on the debtor and his employer, Anheuser Busch, Inc., on September 24, 1982. The return date on the garnishment summons was December 23, 1982. In obedience to the garnishment summons, the employer withheld funds from a series of paychecks—from September 26, 1982 through November 14,

---

7. The same principle applies to the garnishment of a bank account. See *In re Jones, supra,* at 790. ("'[A] 'transfer' under a garnishment lien on a bank account cannot occur until funds are actually deposited into the debtor's account ... [O]nly those funds present in the debtor's bank account on the date the garnishment summons was served coupled with all other funds deposited more than ninety days prior to ... the filing of the petition ... constitute valid transfers not avoidable as a preference ... To the extent that funds were deposited into the debtor's garnished bank account within 90 days prior to bankruptcy, those funds would be a preference.")

1982—until the employer had in hand the total sum needed to pay the judgment. On November 19, 1982, the employer sent the court a sworn answer stating that the full sum had been withheld. On December 23, 1982, the return date, judgment was entered against the garnishee. Subsequently, the debtor filed a Chapter 13 petition on March 11, 1983, in which he sought to exempt a portion of the garnished wages. The court noted that all sums had been deducted from the debtor's wages, and were in the hands of the employer, well in advance of the 90 days before the filing of the bankruptcy petition. In holding that the judgment was not avoidable pursuant to § 547, the court determined,

> The filing of the petition in bankruptcy did not affect the lien of the execution and garnishment summons issued on September 24, 1982, which was more than 90 days before the filing of the petition in bankruptcy. Added to this is the fact that all sums were removed from the possession and control or right of possession and control of [Lamm] more than 90 days before the Bankruptcy petition was filed.... The lien of execution and garnishment having been created more than 90 days before the filing of the petition in bankruptcy and the funds ordered and paid to [the judgment creditor] by the General District Court of Virginia on December 23, 1982, did not constitute a preference and was therefore not voidable under 11 U.S.C. § 547.

*Lamm*, 47 B.R. at 370.

The decision in *Lamm* relied heavily on the Fourth Circuit's opinion in *Baltimore Rigging, supra.* In that case, Frederick Construction Company, Inc., a general contractor, contracted with Alexandria Prestressed, Inc., the debtor, to perform work on Frederick's contract. The debtor in turn engaged Baltimore Rigging to perform certain services. The services were completed and billed to the debtor in January 1963. When the bill was not paid, Baltimore Rigging filed suit in the Maryland state court and sued out a prejudgment attachment, which was served on Frederick, the garnishee on May 31, 1963. On July 30, 1963, however, the parties resolved the dispute and

Frederick offered Baltimore Rigging approximately $11,000 in payment of the attachment lien. The payment was accepted and paid. Although Baltimore Rigging subsequently filed an order in the attachment case stating that the matter had been settled, no judgment was ever entered. On October 11, 1963, more than four months later, an involuntary petition was filed against the debtor. The order for relief was entered on October 21, 1963. The trustee then filed a complaint under § 60 of the Bankruptcy Act, the precursor to § 547, Bankruptcy Code, alleging that the payment constituted an avoidable preference since the state court had never entered an order of payment. The Fourth Circuit held that the transfer for preference purposes occurred on the date that the writ of attachment was served. The court explained, "[S]ervice of the writ of attachment by way of a garnishment ... created an inchoate lien on Bankrupt's property, credit or funds in the hands of Frederick at the time of service, which in this case was May 31, 1963, and judgment may be rendered thereon even after the filing of bankruptcy." *Id.* at 352 (internal citations omitted).

This court is aware that cases in other Circuits have held that the date that the order of payment is entered is the operative date for a § 547 analysis. In particular, the Seventh Circuit has concluded that in the context of a garnishment, a transfer occurs for the purposes of preference avoidance, not when the notice of garnishment is served but when the final order is entered. *Freedom Group, Inc. v. Lapham–Hickey Steel Corp. (In the Matter of Freedom Group, Inc.)*, 50 F.3d 408 (7th Cir.1995). In reaching this conclusion, the court relied on its reading of *Barnhill v. Johnson*, 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992). In *Barnhill*, the Supreme Court held, in determining whether a transfer occurred within the 90–day preference period, that a transfer made by check should be deemed to occur on the date that the drawee bank honors it, not on the date that the check is presented to the recipient. Specifically referring to the Fourth Circuit's opinion in *Baltimore Rigging*, the Seventh Circuit noted:

> We are mindful of the flock of cases which equate perfection to transfer for purposes

of applying the preference-avoidance provision—indeed which hold specifically that a transfer occurs within the meaning of the Code when a notice of garnishment is served. * * * All but one of these cases, however, were decided before the Supreme Court's decision in *Barnhill v. Johnson,* supra, and in our view do not survive that decision. The issue in *Barnhill* was whether a transfer within the meaning of the preferential-transfer provision of the Code—the provision at issue in our case, as well as in the cases we have just cited—occurred when the debtor delivered his check to the creditor or not until the bank on which the check was drawn honored the check; and the Court held that it was the latter, because "myriad events can intervene between delivery and presentment of the check that would result in the check being dishonored." The same thing is true here. Between the service of the notice of garnishment, corresponding to the delivery of a check, and the final order of attachment, corresponding to the bank's decision to honor (pay) the check, all sorts of events might intervene that would prevent the creditor from obtaining payment. * * * We conclude that a garnishment or attachment does not transfer money or other property to a creditor, for purposes of determining whether the transfer is an avoidable preference, until a final order of garnishment or attachment is issued. Until then, the transfer is tentative, its amount uncertain, and control or influence retained by the debtor to be used possibly to play favorites among his creditors.

*Id.* at 412 (internal citations omitted).

▆▆▆ With due respect to the Seventh Circuit, however, its analysis simply misreads *Barnhill.* The primary underpinning for the Supreme Court's holding in that case was that under applicable commercial law, the delivery of a check does not operate as an assignment of the funds in the drawer's bank account and gives the payee no property rights in those funds. As the Supreme Court explained:

A person with an account at a bank enjoys a claim against the bank for funds in an amount equal to the account balance. Under the U.C.C., a check is simply an order to the drawee bank to pay the sum stated, signed by the maker and payable upon demand. Receipt of a check does not, however, give the recipient a right against the bank. The recipient may present the check, but, if the drawee bank refuses to honor it, the recipient has no recourse against the drawee.

*Barnhill,* 503 U.S. at 398–99, 112 S.Ct. at 1389–90 (internal citations omitted). By contrast, in Virginia, the delivery of a writ of fi.fa. to the sheriff creates a lien on all money which the debtor is entitled to receive from the garnishee, and which comes into possession of the garnishee prior to the return date, from the moment that the writ is delivered to the sheriff for execution. *Jones,* 47 B.R. at 789. From the date that a writ of fi.fa. and garnishment summons is given to the sheriff for execution, the judgment creditor has a right of action against the garnishee personally for the amount of the judgment. This is very different from the position of the creditor who has received payment in the form of a check: the delivery of the check, as noted above, gives the creditor no rights against the drawee bank or against the debtor's funds on deposit in the drawee bank. For that reason, nothing in *Barnhill* is inconsistent with the analysis in *Baltimore Rigging,* and this court must respectfully disagree with the suggestion of the Seventh Circuit to the contrary.

### Conclusion

▆▆▆ From the foregoing discussion, the following principles may be distilled:

1. If the bankruptcy petition is filed *before* the order of payment is entered in the garnishment proceedings, an individual debtor may (to the extent of his available exemptions) claim the funds withheld as exempt and avoid the fixing of the execution lien under Sec. 522(f).[8]

---

8. In practice, it should rarely be necessary to resort to a formal lien avoidance motion where a pending garnishment against an individual debtor has been stayed as a result of the bankruptcy

filing. To the extent the debtor properly exempts the funds that have been withheld, but not yet paid over, such exemption trumps the execution lien, and the debtor is entitled to the funds.

2. If the bankruptcy petition is filed *after* the order of payment is entered in the garnishment proceedings, and if the wages that were paid over became subject to the execution lien within 90 days of the bankruptcy filing, an individual debtor may (to the extent of his available exemptions) claim the funds paid over as exempt and avoid the transfer under Sec. 522(g), provided the other requirements of that section are met and none of the preference defenses apply. The wages become subject to the execution lien on the later of the date the debtor earns them or the date the garnishment summons is served on the employer.

3. If the bankruptcy petition is filed after the order of payment is entered in the garnishment proceedings, and if the wages paid over became subject to the execution lien *more* than 90 days prior to the bankruptcy filing, then the payment cannot be avoided as a preference. The wages become subject to the execution lien on the later of the date the debtor earns them or the date the garnishment summons is served on the employer.

In the present case, the payment to Dale on October 23, 1995, of the $806.71 withheld under the garnishment occurred well prior to the filing of the bankruptcy petition, and the debtor had no interest in those funds on the date the petition was filed. Accordingly, the prior fixing of the execution lien cannot be avoided under § 522(f). Additionally, even though the payment to Dale was made within the 90 day preference period, that payment does not constitute an avoidable preference under § 547, Bankruptcy Code, since it was made in satisfaction of a perfected execution lien obtained outside the preference period— the garnishment summons having been served and the wages having been earned more than 90 days prior to the bankruptcy filing. Accordingly, the debtor cannot avoid the transfer under § 522(h), Bankruptcy Code.

Wilson, supra; In re Baum, 15 B.R. 538 (Bankr. E.D.Va.1981) (Bonney, J.). Unless, therefore, the funds withheld have previously been turned

A separate order will be entered denying the debtor's motion to avoid Dale's execution lien.

over to the trustee, they should be paid to the debtor once the debtor's exemption is established.