# United States Bankruptcy Appellate Panel
### FOR THE EIGHTH CIRCUIT
_____

No. 97-6080EMSL
_____

In re:                                        *
                                              *
SHARON DENISE WADE,                   *
                                              *
    Debtor.                           *
                                              *
SHARON DENISE WADE,                   *
                                              *  Appeal from the United States
    Plaintiff-Appellant,              *   Bankruptcy Court for the
                                              *  Eastern District of Missouri
        v.                        *
                                              *
MIDWEST ACCEPTANCE                    *
CORPORATION, and PATRICIA A.   *
FLOOD,                                        *
                                              *
    Defendants-Appellees,             *
                                              *
    and                               *
                                              *
A. THOMAS DEWOSKIN,                   *
                                              *
    Defendant-Trustee.                *
                                              *

_____

Submitted: February 18, 1998.

Filed: April 6, 1998.
_____

Before KOGER, Chief Judge, KRESSEL, and DREHER, Bankruptcy Judges.

DREHER, Bankruptcy Judge.

Appellant, Sharon Denise Wade (Wade), appeals from a decision of the bankruptcy court which denied her lien avoidance as to three wage payments which had been garnished by and paid over to Appellee, Midwest Acceptance Corporation (Midwest), prior to the date she filed her bankruptcy petition and further determined that such wage payments were not preferences. For the reasons stated below, we reverse and remand.

FACTS

On August 23, 1994, Midwest obtained a judgment against Wade in Missouri state court for $4,462.32, plus costs and accruing interest. In pursuit of execution, at Midwest's request, the state court issued a writ of garnishment and execution. The writ, along with the garnishment summons, were served on Wade's employer on August 21, 1996. The return date on the writ was November 11, 1997.

Between September 22, 1996, and December 4, 1996, Wade's employer made six payments into court in response to the writ. Three payments were made by Wade's employer, received by the court, and disbursed to Midwest on the following dates:

| Amount | Employer's Check | Received by Court | Paid to Midwest |
| --- | --- | --- | --- |
| $158.24 | 09/23/96 | 09/26/96 | 10/08/96 |
| $150.33 | 10/07/96 | 10/10/96 | 10/18/96 |
| $156.23 | 10/21/96 | 10/31/96 | 11/13/96 |
| $465.80 | | | |

On November 22, 1996, Wade filed a petition for relief under Chapter 13 of the United States Bankruptcy Code. She voluntarily converted the case to one under Chapter 7 on December 8, 1996. The remaining three payments were made by Wade's employer, received by the court, and disbursed to Midwest on the following dates:

| Amount | Employer's Check | Received by Court | Paid to Midwest |
| --- | --- | --- | --- |
| $139.40 | 11/04/96 | 11/12/96 | 12/03/96 |
| $157.59 | 11/19/96 | 11/25/96 | 12/06/96 |
| $151.69 | 12/04/96 | 12/10/96 | 01/08/97 |
| $448.68 | | | |

2

Wade sought to exempt all six payments under Missouri law, no objections to such claim to exemption were filed, and Wade's Chapter 7 bankruptcy trustee commenced no action to recover any of the payments. Wade then commenced an adversary proceeding against several parties,[1] including Midwest, seeking twofold relief. First, Wade sought to avoid Midwest's lien using the lien avoidance provisions set forth in § 522(f)(1)(A) of the Bankruptcy Code. Alternatively, Wade sought to recover all six payments as preferential prepetition or wrongful postpetition transfers under §§ 522(h), 547, 549 and 550 of the Code. The parties stipulated to the relevant facts and submitted the case for determination by summary judgment on these two causes of action. With respect to the preference action, Midwest did not plead, allege or try any defenses that may have been available to it under § 547(c) of the Code, electing instead to assert that Wade could not establish the necessary elements of a preference.

The bankruptcy court ruled that Wade was entitled to avoid Midwest's lien under § 522(f)(1)(A) as to the last, but not as to the first, three payments. The court reasoned, in essence, that, in order to effect lien avoidance under § 522(f)(1)(A), the debtor must have an interest in property at the time the bankruptcy petition was filed. The court further held that on November 22, 1996, Wade had no interest in the first three payments, but did have an interest in the fourth and fifth payments. The court also ruled that Wade either had an interest in the sixth payment or such payment, constituting postpetition earnings, was not property of the estate under 11 U.S.C. § 541(a)(6). Accordingly, Wade was awarded judgment for the last three payments in the sum of $448.68 and Midwest was required to pay that sum to Wade. The court then held that Midwest had a lien on the first three payments as of the date the writ of garnishment was served, the lien had attached outside the ninety day preference period, and Wade had, therefore, not shown that Midwest enhanced its position during the ninety day preference period by receiving such payments. Midwest was, therefore, not required to pay back the first three payments.

---

[1]Wade sued Midwest; its attorney, Patricia Flood; and the Chapter 7 Trustee, A. Thomas Dewoskin. The Trustee has not been involved in the proceedings and no judgment was entered against him. No judgment was entered against Ms. Flood, who could only be derivatively liable, but she is an Appellee in the case also.

Wade has filed this appeal from that portion of the judgment denying her lien avoidance on the first three payments and rejecting her claim that those three payments were preferences avoidable under § 547 of the Bankruptcy Code. Midwest has not cross-appealed as to the last three payments and the parties agree that the bankruptcy court's decision with respect to those payments is not challenged in this appeal.

As for the bankruptcy court's decision regarding the first three payments, Wade asserts that the court erred when it determined that, because Wade had no interest in the first three payments, she could not avoid Midwest's statutory garnishment lien as to such payments. She also argues that the bankruptcy court erred in holding that the first three payments were not preferential because one of the elements of a preference, improvement in position, had not been established.

## DECISION

We hold that the bankruptcy court erred in its determination that the first three payments were not preferential. Accordingly, we need not address the question of whether the Debtor was entitled to lien avoidance.[2]

I.    STANDARD OF REVIEW

The bankruptcy court in this case granted summary judgment in favor of Midwest with regard to the first three payments garnished by Midwest. We review the bankruptcy court's decision *de novo*. Kunkel v. Sprague Nat'l Bank, 128 F.3d 636, 640 (8th Cir. 1997); Tudor Oaks Ltd. Partnership v. Cochrane (In re Cochrane), 124 F.3d 978, 981 (8th Cir. 1997); Waugh v. I.R.S. (In re Waugh), 109 F.3d 489, 491 (8th Cir. 1997). Thus, we will affirm only if, assuming all reasonable inferences favorable to the nonmoving party, the record on appeal demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. BANKR. P. 7056(c);

---

[2]By failing to address the lien avoidance issue, we do not mean to suggest in any way that the bankruptcy court decided this issue incorrectly. We simply do not need to reach the point.

4

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

II.    ELEMENTS OF A PREFERENCE: RECOVERY BY DEBTOR

Section 547 of the Bankruptcy Code provides:

(b)    Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
(1)    to or for the benefit of a creditor;
(2)    for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3)    made while the debtor was insolvent;
(4)    made--
(A)    on or within 90 days before the date of the filing of the petition; or
(B)    between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5)    that enables such creditor to receive more than such creditor would receive if--
(A)    the case were a case under chapter 7 of this title;
(B)    the transfer had not been made; and
(C)    such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (1994). According to this section, any prepetition transfer is preferential and avoidable if five elements of proof are present. The transfer must be made 1) to or for the benefit of a creditor; 2) for or on account of antecedent debt; 3) while the debtor was insolvent; 4) to a noninsider on or within ninety days of the filing of the bankruptcy case; and, such transfer must 5) result in the creditor receiving more than the creditor would have received in a hypothetical liquidation in a Chapter 7 case.

Section 101 of the Bankruptcy Code defines a "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property . . . ." Id. § 101(54). Section 547(e) defines when a transfer is made. For purposes of this appeal the focus is on § 547(e)(2)(A) and (B) and §

5

547(e)(3). Subsections 547(e)(2)(A) and (B) provide that a transfer is made at the time the transfer takes effect between the parties if the transfer is perfected at or within ten days after such time, or upon perfection, if not so perfected within ten days.[3] Section 547(e)(3) cautions, however, that, for purposes of preference analysis, a transfer is not made "until the debtor has acquired rights in the property transferred." Id. § 547(e)(3).

Ordinarily, only the trustee may bring an action to avoid a prepetition transfer. However, § 522(h) of the Bankruptcy Code, when read in conjunction with § 522(g), allows a debtor to avoid prepetition preferential transfers for the benefit of the debtor if the property would have been exempt and was not voluntarily transferred, and if, further, the trustee has not sought such avoidance.[4] See LaBarge v. Benda (In re Merrifield), 214 B.R. 362, 365 (B.A.P. 8th Cir. 1997). As stated earlier, all three such requirements are met in this case; the parties agree that the garnished wages are exempt, that they were transferred involuntarily,

---

[3]In the case of purchase-money security transactions, a secured creditor is given a twenty-day grace period from the date the debtor receives possession of the collateral in which to perfect its interest. See 11 U.S.C. § 547(c)(B), (e)(3)(A) (1994).

[4]Subsections (g) and (h) of § 522 provide:

> (g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if--
>> (1) (A) such transfer was not a voluntary transfer of such property by the debtor; and
>>> (B) the debtor did not conceal such property; or
>> (2) the debtor could have avoided such transfer under subsection (f)(2) of this section.
> (h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if--
>> (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and
>> (2) the trustee does not attempt to avoid such transfer.

Id. § 522(g), (h).

6

and that they were not the subject of an avoidance action by the trustee. Thus, Wade has standing to seek avoidance of the prepetition transfer.

III.     BANKRUPTCY COURT ANALYSIS

The bankruptcy court determined that the three payments made, first, by the employer to the court, and, then, by the court to Midwest, met the first four criteria of preference. These payments were made to or for the benefit of Midwest, for or on account of Wade's antecedent debt to Midwest, within ninety days prior to the filing of the bankruptcy petition, and while Wade was presumptively insolvent.[5] Referring to and relying upon Missouri garnishment law, however, the bankruptcy court focused on the transfer which occurred when the writ of garnishment was served on August 21, 1996, a date more than ninety days prior to the bankruptcy filing. Because the bankruptcy court read Missouri's garnishment law to provide the garnishor with a continuing lien on all wages earned from the date of service of the writ of garnishment until the return date on the writ or the service of the garnishee's answer, the bankruptcy court held that the fifth element of a preference had not been met. According to the bankruptcy court, the payments made by the garnishee to the court and by the court to Midwest did not result in Midwest's improving its position because Midwest was a creditor holding a lien which attached as to all three payments outside the preference period. This was, in the court's view, as a result of the service of the garnishment summons outside the ninety day preference period. In reaching this conclusion, the bankruptcy court correctly noted that ordinarily payments made to a lien creditor fully perfected prior to the start of the preference period do not improve the creditor's position and are not preferential even if such payments occur within the preference period.

Curiously, the bankruptcy court made reference to Bankruptcy Code § 547(e)(3), but stated that it had "no evidence or stipulation from which to determine whether Debtor's wages were earned inside or outside the preference period." In a later order denying Wade's motion for amended findings, the bankruptcy court rejected Wade's request that the

---

[5]Section 547(f) provides that, "[f]or the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." Id. § 547(f).

bankruptcy court make factual findings or allow additional evidence regarding when the wages were earned, stating, "[a]lthough the stipulation of facts submitted by the parties did not expressly address this issue, it is a determination which can easily be made by reasonable persons."

IV.    MISSOURI LAW

The bankruptcy court correctly interpreted Missouri garnishment law. Missouri's garnishment statutes, like garnishment statutes in many states, provide that service of the notice of garnishment

> shall have the effect of *attaching* all personal property, money, rights, credits, bonds, bills, notes, drafts, checks or other choses in action of the defendant in the garnishee's possession or charge, or under his control *at the time of the service of the garnishment,* or which may come into his possession or charge, or under his control, *or be owing by him, between that time and the time of filing his answer . . . .*

MO. ANN. STAT. § 525.040 (West Supp. 1998) (emphasis added). Missouri Rules of Court further provide that "The service of notice of garnishment and summons attaches the property subject to garnishment in the garnishee's possession or charge or under the garnishee's control between the time the notice is served and the time of the return date on the writ of garnishment." MO. R. CIV. P. 90.06.

Thus, under Missouri law, service of the garnishment summons and writ creates a lien in the garnishor's favor which attaches to wages owing on the date of service and any which accrue thereafter until the return or answer date. Ferneau v. Armour & Co., 303 S.W.2d 161, 166 (Mo. App. 1957); Ralston Purina Co. v. King, 101 S.W.2d 734, 735 (Mo. App. 1937); Bambrick V. Bambrick Bros. Constr. Co., 132 S.W. 322, 324 (Mo. App. 1910); Dinkins v. Crunden-Martin Woodenware Co., 73 S.W. 246, 248 (Mo. App. 1903). The lien created by such service is superior to later perfected security interests. Vittert Constr. and Inv. Co. v. Wall Covering Contractors, Inc., 473 S.W.2d 799, 804 (Mo. App. 1971) (lien created by service of the garnishment summons is superior to later-assessed federal tax lien); M. R. Dugan v. Missouri Neon & Plastic Adver. Co., 472 F.2d 944, 952 (8th Cir. 1973) (same). Under Missouri law, the lien is a continuing one. That is, it attaches to property held by the

8

garnishee and owing to the debtor on the date the garnishment writ is served and to property coming into the garnishee's possession or control thereafter. Missouri law also specifically provides that debts not yet due may be attached, but not executed on, until they become due. MO. ANN. STAT. § 525.260 (West 1953).

Plainly, then, under Missouri law the service of the garnishment summons on August 21, 1996, created a perfected lien on all wages then owing or owing at any time between said date and November 11, 1997. If bankruptcy had not intervened, Midwest would have had a garnishment lien on the Debtor's wages earned between those two dates, perfected and attached as of August 21, 1997, on a retroactive basis as wages were subsequently earned.[6] The lien would have had priority over any lien or security interests attaching thereafter.

## V.    FEDERAL LAW: SECTION 547(e)(3)

As stated earlier, § 547(e)(3) furnishes a caveat to the general rule that a transfer becomes effective for preference purposes at the time it is effective between the parties. The Code prevents a transfer which might otherwise have been considered to have occurred when a continuing lien is created from actually being effective for preference analysis "until the debtor has acquired rights in the property transferred." 11 U.S.C. § 547(e)(3). Where wages are involved this means that no transfer occurs until the wages are earned. And, thus, if future wages are subject to a garnishment lien arising outside the ninety day preference period, but are earned within that ninety day period, the lien does not attach until the wages are earned.

It is fundamental that state law controls the underlying rights parties may have to property, contracts, and the like. See, e.g., Butner v. United States, 440 U.S. 48, 55 (1979)

---

[6]Subject, of course, to Missouri's exemption law for earned wages. Under Missouri law, the maximum amount of an individual's weekly earnings that may be subject to garnishment may not exceed: (a) twenty-five percentum, or, (b) the amount by which his aggregate earnings for that week, after deduction from those earnings of any amounts required to be withheld by law, exceed thirty times the federal minimum hourly wage prescribed by section 6(a)(1) of the Fair labor Standards Act of 1938 in effect at the time the earnings are payable, or, (c) if the employee is the head of a family and a resident of Missouri, ten percentum, whichever is less. See MO. ANN. STAT. § 525.030 (West Supp. 1998).

(stating that "property interests are created and defined by state law").  Notwithstanding this principle, it is also clear that "federal law is preemptive in bankruptcy."  Anderson v. DeLong (In re Chicora Group), 99 B.R. 715, 716 (Bankr. D. S.C. 1988) (citing Waldschmidt v. Ford Motor Credit Co. (In re Murray), 27 B.R. 445 (Bankr. M.D. Tenn. 1983)).  Thus, while state law may create certain rights to property, federal preference law may act to alter those rights.  The most recent and important example of this axiom is the Supreme Court's decision in Fidelity Financial Services, Inc. v. Fink, 118 S. Ct. 651 (1998).  In Fidelity, the debtor purchased a new car with funds provided by Fidelity.  She gave Fidelity a note secured by the car, but Fidelity failed to perfect its security interest within the twenty-day time limit of § 547(c)(3)(B).  Missouri law deemed perfection of a security interest to have occurred on the date of delivery, if all the necessary papers were recorded within thirty days of delivery.  The Supreme Court held that perfection must occur within 20 days as set forth in § 547(c)(3)(B), regardless of Missouri law on the subject.  Fidelity resolved a long-standing split in the courts on the question of whether state law deemed perfection could trump the federal statutory definition found in § 547(c)(3)(B).  See 118 S. Ct. at 653 n.2.  The Court held, importantly, that state perfection law yields to federal preference law where the two are in conflict.  See id. at 656.

The analysis is strengthened by reference to a leading commentary which addresses this precise question:

> Although the section 547(e)(3) caveat is aimed primarily at UCC Article 9 floating liens, application of the caveat is not limited to them.  It applies to every kind of transfer, including involuntary transfers of the debtor's property.  Suppose, for example, that C wins a judgment against D and gets a continuing garnishment against D's employer.  The garnishment first takes effect when the writ of garnishment is served on the employer.  At that time a lien on D's wages attaches in favor of the garnishing creditor.  Suppose, also, that the garnishment is a continuing garnishment, that is, the lien affects wages thereafter earned by D until the garnishment expires by law or by the terms of the writ.  The garnishment may continue until the creditor's judgment is satisfied.
>
> Service of the writ occurred, and thus the garnishment lien initially arose, outside of the preference period.  The lien is nevertheless preferential

to the extent that the lien spreads to the sums that D earns during the preference period. The reason is that D does not acquire rights to her wages until she earns them. Thus, because of the section 547(e)(3) caveat, any transfer of her wages, including a transfer to a creditor by way of a continuing garnishment, cannot occur until the wages are earned or later, notwithstanding that the continuing lien of garnishment that automatically attaches to the wages as soon as she earns them predates the preference period.

1 DAVID G. EPSTEIN ET AL., BANKRUPTCY § 6-15, at 553-55 (1992) (footnotes omitted). The authors acknowledge case authority to the contrary but view such cases as "analytically flawed" because they base their analysis on a view that a continuing garnishment may be analogized to a voluntary assignment of a right arising in the future under an executory contract; i.e., viewing a continuing garnishment "as effecting an existing, albeit contingent, right to unearned wages:"

> First, the argument presupposes that this common-law theory regarding the assignment of rights under executory contract applies to garnishment, and further assumes that the thing is not displaced, in bankruptcy preference cases, by section 547(e)(3).
>
> Second, even if applicable, the theory must be applied consistently with the section 547(e)(3) caveat. The language of the section equates the time of transfer with the time the debtor gets rights "*in the property transferred.*" Although an employee may have a right to receive wages, i.e., money, if she continues working, and although that executory contract right may be transferred to her creditor when the garnishment lien is first effective, the employee obviously gets no rights, as against her employer, *to money that the employee earns,* until the employee earns it. This money, i.e., earned wages, is the object of our concern here, that is, earned wages or money is the property actually transferred.
>
> Because this money is the property transferred, and because the debtor acquires no rights to it until she earns it, there can be no transfer of wages, for preference purposes, until the wages are earned. Thus, wages earned during the preference period are transferred then despite their being subject to a continuing garnishment that pre-dates the period.

Id. at 556 (footnotes omitted) (emphasis in original).

We think this reasoning sound. It fully comports with the literal language of § 547(e)(3), see United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989), and it is consistent with the recent Supreme Court decision in Fidelity. Simplistically stated, state nonbankruptcy law *does* determine when a transfer is effective between the parties and against third persons, and also when the debtor acquires rights in the property. But, federal law, namely the caveat provided by § 547(e)(3), determines precisely when a transfer is made for purposes of preference analysis.

The bankruptcy court relied heavily on the case of In re Wilkinson, 196 B.R. 311 (Bankr. E.D. Va. 1996). While Wilkinson was correctly decided and well-reasoned, the bankruptcy court's reliance was misplaced. Wilkinson is entirely distinguishable from the case at hand. In Wilkinson, as in this case, the garnishment summons and writ were served more than ninety days prior to the filing; payment to the garnishor was made within the preference period. Virginia, like Missouri, grants a garnishor a lien on all funds that the debtor is entitled to receive from the garnishee on the date the garnishment is served and all funds to which the debtor becomes entitled prior to the return date on the summons. The Wilkinson court correctly noted two "conceptually distinct transfers;" one which occurred when the garnishment summons was served and one which occurred when the wages were paid to the garnishor. Id. at 319. The court held that the second transfer, occurring within the ninety day preference period, was not preferential because payments were made on a fully secured claim which had been created outside that time frame. The distinguishing feature in Wilkinson, and one emphasized in the court's analysis, however, was the fact that all payments made to the garnishor during the ninety day preference period were wages that had been earned before ninety days prior to the bankruptcy filing. Using precisely the analysis we use here, and referencing § 547(e)(3) in particular, the Wilkinson court found no preference. It did, however, make clear that its conclusion would have been different if the wages had been earned during the preference period. Citing Mayo v. United Services Automobile Association (In re Mayo), 19 B.R. 630, 632-33 (E.D. Va. 1981), which itself quoted Cox v. General Electric Credit Corp. (In re Cox), 10 B.R. 268 (Bankr. D. Mo. 1981), the Wilkinson court emphasized that "a payment of the garnishment attributable to wages earned by the debtor within ninety days of the filing of a bankruptcy petition is a preferential transfer to a judgment creditor," and distinguished such a case from one where payment was

12

made for wages earned and subjected to a garnishment summons wholly outside the ninety days.  Id. at 320.

Accordingly, we conclude that a garnishment of wages earned within the ninety day preference period is avoidable by the Debtor, but that a garnishment of wages earned outside that ninety day time frame is not.  Attachment of a lien on garnished wages earned within the ninety day preference period is, thus, a preferential transfer.  Because the record does not evidence when the three wage payments were earned, and particularly because appellant sought and was denied the opportunity to develop that record, we reverse and remand with instruction that the bankruptcy court determine when the wages on the first three payments were earned and whether a material fact issue exists on the question and that it enter a judgment or decision based on such determination.

Accordingly, we reverse and remand to allow the bankruptcy court to take further action consistent with this decision.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE EIGHTH CIRCUIT

13