# United States Bankruptcy Appellate Panel
**FOR THE EIGHTH CIRCUIT**

———

No. 00-6083EA

———

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Harold James and Lisa A. James | * | |
| | * | |
| | * | |
| Debtors. | * | |
| | * | |
| Harold James and | * | |
| Lisa A. James, | * | |
| | * | |
| Plaintiffs-Appellants, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| v. | * | Eastern District of Arkansas |
| | * | |
| Planters Bank, | * | |
| | * | |
| Defendant-Appellee. | * | |

———

Submitted: December 18, 2000
Filed: January 24, 2001

———

Before KRESSEL, SCHERMER and DREHER, Bankruptcy Judges.

———

KRESSEL, Bankruptcy Judge.

The plaintiffs, who are debtors in a Chapter 7 case, appeal from the order and judgment of the bankruptcy court[1] granting in part and denying in part their complaint to recover certain prepetition wage garnishments and denying their request to hold the defendant, Planters Bank, in contempt. We affirm.

BACKGROUND

On July 24, 1998, Planters obtained a judgment against Harold James in the amount of $12,459.05, plus attorney's fees and costs. Planters then caused a Writ of Garnishment to be issued to Mr. James' employer, Siegel Roberts of Arkansas, on August 14, 1998. Siegel Roberts answered the writ. Thereafter, on October 6, 1998, the state court entered an Order for Payment directing Siegel Roberts to pay Planters the properly garnished wages of Harold James which were not subject to exemption. Pursuant to this Order for Payment, Siegel Roberts began garnishing Harold James' wages effective November 6, 1998; Siegel Roberts paid the following amounts to Planters:

| Payroll Week Ending | Check Date | Amount |
|---|---|---|
| 1. 10/25/98 | 11/04/98 | $178.25 |
| 2. 11/08/98 | 11/20/98 | $178.25 |
| 3. 11/20/98 | 12/4/98 | $178.25 |
| 4. 11/30/98 | 12/4/98 | $71.25 |
| 5. 12/6/98 | 12/18/98 | $178.25 |
| 6. 11/30/98 | 1/01/99 | $41.50 |
| 7. 12/20/98 | 1/01/99 | $178.25 |
| 8. 1/03/99 | 1/15/99 | $178.25 |
| 9. 1/17/99 | 1/29/99 | $178.25 |
| 10. 1/31/99 | 2/12/99 | $178.25 |
| 11. 1/31/99 | 2/12/99 | $93.90 |
| 12. 2/14/99 | 2/26/99 | $273.16 |
| 13. 2/28/99 | 3/12/99 | $173.16 |

The Jameses filed a Chapter 7 bankruptcy petition on March 9, 1999. Following the Trustee's Report of No Assets, and the order granting the debtors a discharge, the bankruptcy case was closed by the court on June 15, 1999. By order entered October 12, 1999, the bankruptcy court granted the

---

[1] The Honorable James G. Mixon, Chief Judge, United States Bankruptcy Court for the Eastern and Western Districts of Arkansas.

debtors' motion to reopen their bankruptcy case and allowed the debtors 30 days in which to file a complaint against Planters.

On November 3, 1999, the debtors filed a Complaint for Turnover and for Contempt against Planters. The complaint alleged that the garnishments numbered 5 through 12 above were preferences under 11 U.S.C. § 547(b) and should be avoided.[2] The complaint also asserted that the last garnishment, paid by check dated March 12, 1999, violated the automatic stay of 11 U.S.C. § 362(a). Finally, the debtors maintained that Planters' refusal to turnover the garnished funds, in 5 through 13 above was contemptuous conduct for which Planters should be sanctioned and ordered to pay debtors' attorneys' fees and costs.

Following a trial, in July 2000, the bankruptcy court entered an order determining that: (i) the date of the "transfer" of the garnished wages, for § 362(a) and § 547(b) purposes, was the date Harold James earned the wages, not the date that Siegel Roberts sent the money to Planters, nor the date Planters received the money; (ii) all wages "earned" during the 90 days preceding the filing of the bankruptcy petition (the 90 day period commenced on December 10, 1998) were preferential transfers under § 547(b), and should be avoided; (iii) there was no violation of the automatic stay because the "transfer" of Harold James' interest paid by the check dated March 12, 1999, occurred prepetition on the date the wages were earned. Thus, the bankruptcy court denied the debtors' request to hold Planters in contempt, and denied their request for attorneys' fees and interest, stating that Planters was under no legal obligation to turnover an alleged preferential transfer until ordered to do so by the court. Judgment was entered in the debtors' favor in the amount of $1,353.22, which was the total amount transferred in the garnishments numbered 7 through 13 above.

The debtors' appeal challenges two prepetition garnishments which the bankruptcy court did not find preferential: number 5, for the pay period ending December 6, 1998 and paid by check dated December 18, 1998; and number 6, for the pay period ending November 30, 1998 and paid by check dated January 1, 1999. The debtors assert that the transfer date for § 547(b) purposes should be the date the checks were issued, not the date that the wages were earned. The debtors also challenge the court's refusal to find Planters in contempt for allegedly violating the automatic stay of 11 U.S.C. § 362(a), and

---

[2] The debtors did not challenge the garnishments numbered 1 through 4.

the court's refusal to assess Planters for the debtors' attorneys' fees and cost incurred as a result of Planters' alleged contempt.

## DISCUSSION

We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. *Blackwell v. Lurie (In re Popkin & Stern)*, 223 F.3d 764, 765 (8th Cir. 2000); *Hervey v. Wendover Fin. Srvs. (In re Hervey)*, 252 B.R. 763, 765 (B.A.P. 8th Cir. 2000).

A.  Preferential Transfers Under § 547(b)

*Standing*

Generally, only the trustee may bring an action to avoid a prepetition transfer.  However, a debtor has standing to avoid a transfer if: (1) the property transferred would have been exempt; (2) the property was not transferred voluntarily; and (3) the trustee has not sought to bring an avoidance action.  *See* 11 U.S.C. § 522(g)-(h); *Wade v. Midwest Acceptance Corp. (In re Wade)*, 219 B.R. 815, 819 (B.A.P. 8th Cir. 1998).  Here, there is no dispute that these requirements are met, nor is there any dispute that the debtors had standing to bring the avoidance action.[3]

*The Merits*

Section 547(b) provides that a trustee may avoid any transfer of an interest of the debtor in property:

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before
> such transfer was made;
> (3) made while the debtor was insolvent;[4]
> (4) made–

---

[3]  Although not challenged by Planters, we doubt that Lisa A. James had standing to avoid or recover the preferential transfers.

[4]  For the purposes of § 547, the debtor is presumed to have been insolvent "on and during the 90 days immediately preceding" the bankruptcy petition filing date.  11 U.S.C.  § 547(f).

          (A) on or within 90 days before the date of the filing of
          the petition . . .[5]

      (5) that enables such creditor to receive more than such creditor would
      receive if–

          (A) the case were a case under Chapter 7 of this title;

          (B) the transfer had not been made; and

          (C) such creditor received payment of such debt to the
          extent provided by provisions of this title.

11 U.S.C. § 547(b).

      The term "transfer" is broadly defined in 11 U.S.C. § 101 as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." 11 U.S.C. § 101(54). In this case, the bankruptcy court determined that the "transfer" date, for § 547(b) purposes, was the date upon which Harold James *earned* his wages, not the date the check was issued to or received by Planters, because the earned date is when the garnishment lien attached and a transfer of the debtors' interest in the wages occurred. The bankruptcy court was correct.

      The bankruptcy court based its ruling on our decision in *Wade v. Midwest Acceptance Corp. (In re Wade)*, 219 B.R. 815 (B.A.P. 8th Cir. 1998). There, we held that: "a garnishment of wages earned within the ninety day preference period is avoidable by the [d]ebtor, but . . . a garnishment of wages outside that ninety day time frame is not. Attachment of a lien on garnished wages earned within the ninety day preference period is, thus, a preferential transfer." *Id.* at 823.

      Arkansas garnishment law, similar to the Missouri law examined in *Wade*, provides that service of a writ of garnishment on the garnishee (Planters) creates a lien in favor of the garnishor, which attaches to wages owing on the date of service and continues "as to subsequent earnings until the total amount due upon the judgment and costs is paid or satisfied." Ark. Code Ann. § 16-110-415; *W.B. Worthen Co. v. Thomas*, 292 U.S. 426, 429 (1934); *Foster v. Pollack Co.*, 291 S.W. 989, 990 (Ark. 1927). Thus, under Arkansas law, service of the garnishment writ on Siegel Roberts created a perfected lien on all wages

---

    [5] The "look-back" period is extended to one year if the creditor was an insider of the debtor at the time of transfer. 11 U.S.C. § 547(b)(4)(B).

owing at the time the writ was served. The lien was to continue until the judgment was paid or satisfied. *See* Ark. Code Ann. §§ 16-110-401, 415; *Wade*, 219 B.R. at 820. "If bankruptcy had not intervened, [Planters] would have had a garnishment lien on [Harold James'] wages earned between [the date of service of the writ and payment of the judgment], perfected and attached as of [on or about August 14, 1998], on a retroactive basis as wages were subsequently earned," subject to Arkansas' exemption laws.[6] *See Wade*, 219 B.R. at 820.

However, as we stated in *Wade*, § 547(e)(3) "prevents a transfer which might otherwise have been considered to have occurred when a continuing lien is created from actually being effective for preference analysis 'until the debtor has acquired rights in the property transferred.'" *Wade*, 219 B.R. at 821 (quoting 11 U.S.C. § 547(e)(3)). Where the property transferred is the debtor's wages, "this means that no transfer occurs until the wages are earned." *Wade*, 219 B.R. at 821. Therefore, although the garnishment lien arose outside the ninety day period, the lien did not attach until the wages were earned by Harold James.

The ninety day preference period in this case commenced on December 10, 1998. The bankruptcy court correctly ruled that the garnishments of Harold James' wages earned during the ninety day period were preferential transfers which the debtors could avoid under § 547(b). This included the final garnishment, number 13, which was paid by check dated March 12, 1999, for wages earned by Harold James on the pay period ending date of February 28, 1999. The bankruptcy court's determination that garnishments numbered 5 and 6 were not preferential was also correct. Both of those garnishments, paid within the ninety day period (on December 18, 1998, January 1, 1999, respectively) involved wages earned outside the ninety day period (December 6, 1998, and November 30, 1998, respectively). The transfers of the debtors' interest occurred when the lien attached, which occurred when the wages were earned - outside of the preference period.

The debtors focus on a second transfer: the transfer by Siegel Roberts to Planters of a check in satisfaction of the garnishment. However, unless the debtors can avoid the transfer of their interest resulting from the attachment of the garnishment lien, they cannot avoid that payment. If the lien is unavoidable, then payment on the lien is not a transfer of the debtors' interest in property nor does that transfer allow Planters to receive more than it would have received if the transfer had not been made. *See* 11 U.S.C. §

---

[6] *See* Ark. Const. art. 9, § 1; Ark. Code Ann. §§ 16-66-208, 221, 16-110-402.

547(b)(5). If, for some reason, Siegel Roberts had held all of the money garnished until bankruptcy, Planters, as a secured creditor, would have been entitled to recover all of the money held.

B.  Contempt/Sanctions & The Automatic Stay Of § 362(a)

The debtors argue that the bankruptcy court erred in its refusal to hold Planters in contempt, and assess attorneys' fees and costs, for Planters' alleged violation of 11 U.S.C. § 362(a) for receiving and refusing to turnover to the debtors the wages garnished for the pay period ending February 28, 1999, paid by check, from Siegel Roberts to Planters, dated March 12, 1999, three days after the bankruptcy petition was filed. The bankruptcy court ruled that there was no violation of the automatic stay and that the transfer was a preference, which Planters had no legal obligation to turnover or return until the preference was avoided. We conclude that contempt is not a remedy for violating the statute, and further, that Planters did not violate the automatic stay. Therefore, we affirm the judgment of the bankruptcy court.

*Contempt Not a Remedy*

Section 362(a) provides that the filing of a bankruptcy petition operates as a stay of all actions to, among other things: collect a claim against the debtor that arose prepetition; enforce a prepetition judgment against the debtor or property of the estate; take acts to obtain possession of property of estate or to exercise control over property of the estate. *See* 11 U.S.C. § 362(a)(1)-(3). The debtors assert, without any citation to authority, that Planters should be held in contempt and ordered to pay debtors' fees and costs in seeking the contempt for violating § 362(a). However, even if Planters did violate § 362(a), contempt is not an appropriate remedy.

Although some courts have said that an entity may be held in contempt for violating the automatic stay, this "overlooks the fact that contempt is a remedy for violating court orders, not statutes." *Sosne v. Reinert & Dupree, P.C., (In re Just Brakes Corporate Sys., Inc.)*, 108 F.3d 881, 885 (8th Cir. 1997). Prior to the 1978 enactment of the Bankruptcy Code, the stay protection debtors receive arose by court order. *See Moratzka v. Visa U.S.A. (In re Calstar, Inc.)*, 159 B.R. 247, 257 (Bankr. D. Minn. 1993). But now, the automatic stay is a "creation of Congress," not of the courts. *Id.* Since the stay is a statutory provision and not a court order, contempt is no longer an appropriate remedy. *See id.* at 257-58.

7

Therefore, since Planters is not alleged to have violated any court order, but instead, a statutory provision, the bankruptcy court's refusal to hold Planters in contempt was proper. *See Just Brakes*, 108 F.3d at 885; *Calstar*, 159 B.R. at 257-58. If there was a violation of the automatic stay, the remedy must be found elsewhere.

## *Was There a Violation of the Automatic Stay?*

If Planters violated the automatic stay of § 362(a), the debtors have a statutory remedy in § 362(h). This provision states that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). In this case, however, there was no violation of the automatic stay.

If the debtors had no legal or equitable interest in the wages transferred to Planters by the check dated March 12, 1999, then there can be no violation of the automatic stay. *See* 11 U.S.C. §§ 362(a), 541. To determine whether the wages were property of the bankruptcy estate, we must look to Arkansas garnishment law.

In Arkansas, when a plaintiff has received a judgment and has "reason to believe that any other person is indebted to the defendant or has in his hands or possession goods and chattels, moneys, credits . . . belonging to the defendant, the plaintiff may sue out a writ of garnishment, setting for the claim, demand, or judgment" and causing a summons to issue to the garnishee to "answer what goods, chattels, moneys . . . he may have in his hands or possession belonging to the defendant to satisfy the judgment . . . ." Ark. Code Ann. § 16-110-401(a)(1).[7] The garnishment writ is issued pursuant to the procedures set forth in § 16-110-402, which section includes the notice judgment debtors/defendants must receive regarding their rights to claim exemptions for all or part of their wages. *See* § 16-110-402; *see also* Ark. Const. art. 9, § 1; Ark. Code Ann. §§ 16-66-208, 221. As stated previously, service of the writ of garnishment creates a continuing lien in favor of the garnishor. *See* Ark. Code Ann. § 16-110-415; *Worthen*, 292 U.S. at 429; *Foster*, 291 S.W. at 990 (stating that "garnishment is in the nature of a proceeding in rem, and . . . service of process on the garnishee creates a lien in favor of the plaintiff on the money due *from*

---

[7] If the garnishee fails to respond to the writ, or to any interrogatories propounded with the writ, the court will enter a judgment adjudicating the garnishee personally liable for the full amount specified in the writ. *See* Ark. Code Ann. §§ 16-110-401(a)(2), 16-110-407.

8

*the garnishee to the defendant*") (emphasis added). Following the garnishee's response to the writ, the court will then enter judgment. *See* Ark. Code Ann. §§ 16-110-404, 410.

Section 16-110-410 provides, in pertinent part, that if the court rules in favor of the plaintiff/garnishor on the writ, then "judgment shall be entered for the *amount due from the garnishee to the defendant* in the original judgment, or so much thereof as will be sufficient to satisfy the plaintiff's judgment, with costs." Ark. Code Ann. § 16-110-410(b) (emphasis added); *see also Moory v. Quadras, Inc.,* 970 S.W.2d 275, 277 (Ark. 1998) (stating that "a writ of garnishment is a suit directed to a third party to determine whether the garnishee is indebted to the judgment debtor, and to obtain a judgment that such money . . . be paid to the judgment creditor"). Section 16-110-411, sets forth the effect such a judgment has on a garnishee. It provides that a judgment rendered against the garnishee, where the garnishee responded to the writ and interrogatories, "shall have the effect to release the garnishee from all responsibility in relation to the goods and chattels, moneys, credits, and effects for which the judgment may have been rendered." Ark. Code Ann. § 16-110-411.

In other words, under §§ 16-110-410 and 411, the judgment entered in favor of the garnishor against the garnishee (employer) extinguishes the employer's liability to the employee and instead makes the employer liable to the garnishor. Put another way, the judgment terminates the employee's interest in the garnished wages. Therefore, at the time the case was commenced, the debtors had no interest in the wages earned prepetition.[8]

Citing *Chase Lumber & Fuel Co. v. Koch (In re Koch)*, 197 B.R. 654 (Bankr. W.D. Wis. 1996), the debtors argue that they retained an equitable interest in the garnished wages at the time the bankruptcy was filed because they had a right to object to the garnishment. In *Koch*, the bankruptcy court held that the debtor retained an equitable interest in garnished wages until the time that the debtor's right to contest the garnishment (by claiming an exemption) was extinguished. *See id.* at 659-660. This time, the court stated, could "occur no earlier than the time the garnishee is liable under the statute to turn over funds to the garnishor." *Id.* at 660. Under the Wisconsin statute at issue in *Koch*, the debtor had five business days within which to challenge the garnishment. *See id.* (citing Wis. Stat. § 812.39(1)).

---

[8] This, of course, does not change the fact that the transfer of these wages which occurred when the garnishment lien attached on February 28, 1999, was a preferential transfer as discussed above.

9

Here, however, Arkansas statutes §§ 16-110-410 and 411 extinguish the debtor's interest once the judgment pursuant to the garnishment writ (the order to pay in this case) is entered. *See* Ark. Code Ann. §§ 16-110-410-411. If Harold James wished to contest the garnishment or claim an exemption, he was required to have filed a schedule of all his property within forty-five (45) days of the judgment entered against him in favor of Planters. *See* Ark. Code Ann. § 16-66-221; *see also* Ark. Code Ann. § 16-66-211(providing that a judgment debtor seeking to claim an exemption must file a property schedule after giving five days' notice to the judgment creditor). Nothing in the record demonstrates that Harold James filed such a schedule within the specified time period. Further, where the debtor does not timely claim an exemption in the manner provided by Arkansas law, he waives his right to seek such exemption. *See, e.g., Andrews v. Briggs*, 158 S.W.2d 269 (Ark. 1942). Thus, the debtors had no interest in the wages garnished prepetition.

Accordingly, we affirm the bankruptcy court's order refusing to sanction Planters for the debtors' attorneys' fees and costs and "actual damages."


CONCLUSION


For the foregoing reasons, the judgment of the bankruptcy court is affirmed.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE
PANEL, EIGHTH CIRCUIT.

10