**In re Angela C. MCGOVERN, Debtor.**

**No. 02–91998.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

June 11, 2003.

Gregory J. Wald, St. Paul, MN, Linda Jeanne Jungers, Minneapolis, MN, for debtor.

## ORDER GRANTING DEBTOR'S MOTION FOR AVOIDANCE OF JUDICIAL LIEN

GREGORY F. KISHEL, Chief Judge.

This Chapter 7 case came on before the Court for hearing on the Debtor's motion for lien avoidance under 11 U.S.C. § 522(f)(1). The Debtor appeared by her attorney, Gregory J. Wald. First Select, Inc. ("First Select") appeared by its attorney, Linda J. Jungers. Upon the moving and responsive documents and the arguments of counsel, the Court memorializes the following decision pursuant to Fed. R.Civ.P. 52(a) and Fed. R. Bankr.P. 9014.

### FACTS

All of the facts relevant to this motion occurred in the context of legal proceedings, in this court and another.

Early in 2002, First Select sued the Debtor in the Minnesota State District Court for the Second Judicial District, Ramsey County. It received a judgment against her in the amount of $3,118.87, docketed on May 17, 2002.

On July 2, 2002, First Select's attorney served a document entitled "Execution Exemption Notice and Notice of Intent to Levy on Earnings" on the Debtor. It acted pursuant to Minn.Stat. § 551.06, Subd. 6, serving via first-class mail. The Debtor did not claim any of the blanket exemptions from execution on wages that are specified in the statute.

At the time, the Debtor was employed by the State of Minnesota, Department of Health. On July 16, 2002, First Select's counsel served the State Department of Health with a document entitled "Notice of Levy on Earnings and Disclosure." In doing so, it acted under Minn.Stat. § 551.06, Subd. 9. Pursuant to the statute, that document provided, in pertinent part:

> PLEASE TAKE NOTICE that ... the undersigned, as attorney for the judgment creditor, hereby makes demand and levies execution upon all earnings due and owing by you (up to $10,000) to the judgment debtor for the amount of the judgment specified below.
>
> \* \* \*
>
> This levy attaches all unpaid nonexempt disposable earnings owing or to be owed by you and earned or to be earned by the judgment debtor before and within the pay period in which the writ of execution is served and within all subsequent pay periods whose paydays occur within the 70 days after the service of this levy.
>
> In responding to this levy, you are to complete the attached disclosure form and worksheet and mail it to the undersigned attorney for the judgment creditor, together with your check payable to the above-named judgment creditor, for the nonexempt amount owed by you to the judgment debtor or for which you are obligated to the judgment debtor
>
> ...

Along with this document, First Select's counsel served a writ of execution subscribed by the Administrator of the Ramsey County District Court, and endorsed by First Select's counsel. The State Department of Health received these documents on July 18, 2002.

Pursuant to the writ of execution, the Department of Health withheld certain sums from wages owing to the Debtor as of the service of the Notice of Levy, and from other wages subsequently earned and owing through some point in mid-August, 2002.

The Debtor then filed her voluntary petition under Chapter 7 on August 3, 2002. On August 7, 2002, her bankruptcy counsel called the office of the law firm that was handling the collection activity for First Select. He prevailed on Debra Hesley, a non-attorney employee of the firm, to inquire of the State Department of Health as to the amounts withheld pursuant to the levy. Hesley also agreed to get the Department of Health to cease further withholding from post-petition wages. Over the next two weeks, Hesley attempted on a couple of occasions to contact a payroll clerk at the State of Minnesota. She finally spoke with that person on August 23, 2002, and resolved the several issues with her.

As a result, Hesley released all funds held by the State of Minnesota from the levy, other than the sum of $452.09. This, apparently, was the amount identified as wages earned by the Debtor before her bankruptcy filing. Ultimately, all sums other than the $452.09 were released to the Debtor. First Select's attorneys received the levy remittance of $452.09 on September 5, 2002.

### MOTION AT BAR

In filing this motion, the Debtor declared she was doing it "to avoid and can-

cel a judicial lien ..."[1] After summarizing the circumstances of the levy just noted, she asserted that "[t]he existence of the levy constitutes a judicial lien, under the meaning of 11 U.S.C. [§ ]101(32)," the attachment of which impaired an exemption to which she would have been entitled in this case.

The Debtor is invoking the remedy of lien avoidance granted to debtors under 11 U.S.C. § 522(f)(1)(A).[2] This remedy was created in the enactment of the Bankruptcy Code of 1978. It was designed to promote the "fresh start" in bankruptcy by enabling debtors to maximize the benefit of exemption statutes. H.R. REP. No. 595, 95th Cong. 1st Sess. 362 (1977); S. REP. No. 989, 95th Cong., 2d Sess. 76 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 5787; *In re Kolich,* 328 F.3d 406, 410 (8th Cir.2003). Thus, to the extent that a creditor used the sort of judicial process described in 11 U.S.C. § 101(36)[3] to obtain a non-consensual lien against property of a debtor that otherwise could be protected as exempt, the debtor may free the asset by avoiding the lien.[4]

This motion presents a threshold-level issue: did the statutory collection procedures that First Select had used to bring about the withholding from the Debtor's wages create a judicial lien within the definition of § 101(36), that was in existence when the Debtor filed for bankruptcy?[5] The Debtor argues that it had, and hence the lien's attachment may be avoided. To opposite result, First Select argues that its statutory "attorney levy" worked an absolute transfer of the withheld wages. Thus, it maintains, because § 522(f)(1)(A) applies only to the attachment of liens, such a transfer would not be subject to avoidance under the authority invoked by the Debtor.[6]

The outcome on this issue is controlled by state law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (for purposes of bank-

---

1. In the same breath, the Debtor stated that she was seeking "to enforce the automatic stay with respect to wages that were levied after the filing of [her bankruptcy] petition." With First Select's release of some portion of the withheld wages, this effort seems to be moot. In any event, counsel did not argue for it when the motion was submitted to the Court.

2. In pertinent part, this statute provides:
   ... the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under [11 U.S.C. § 522(b)], if such lien is–
   (A) a judicial lien, ...

3. This statute defines "judicial lien" as "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding ..."

4. As a statutory remedy, the avoidance is accomplished by a court order, obtained by bringing a motion in the bankruptcy case.

Fed. R. Bankr.P. 4003(d). First Select's argument that lien avoidance is accomplished only by adversary proceeding has no merit.

5. There is no dispute that the Debtor could have claimed and been allowed an exemption for the $452.09, had it not been withheld and had she retained it in her possession when she filed for bankruptcy.

6. Under 11 U.S.C. § 522(h), debtors in bankruptcy have a derivative remedy for avoidance of certain involuntary pre-petition transfers, including those that are deemed preferential under 11 U.S.C. § 547(b). *In re James,* 257 B.R. 673, 675 (8th Cir. BAP 2001); *In re Wade,* 219 B.R. 815, 819 (8th Cir. BAP 1998); *In re Klingbeil,* 119 B.R. 178, 181 (Bankr. D.Minn.1990). However, because the amount in question here does not exceed the $600.00 threshold of 11 U.S.C. § 547(c)(8), the Debtor could not use this remedy if the operative event were deemed a transfer.

ruptcy case, "property interests are created and defined by state law"). *See also Wallace T. Bruce, Inc., v. Najarian,* 249 Minn. 99, 108, 81 N.W.2d 282, 293 (1957). That law is Minn.Stat. §§ 551.01—551.06, which govern the collection remedy of attorney's summary execution on wages and other indebtedness owed to a judgment debtor, as well as other Minnesota law on levy of execution.

The applicable law starts with the broad principles of Minn.Stat. c. 550, which governs the general collection remedy of execution. Minn.Stat. § 550.02 provides:

> Where a judgment requires the payment of money, or the delivery of real or personal property, it may be enforced in those respects by execution.

The writ of execution is the document that enables this enforcement. It is issued by the state court administrator; its facial requisites are set forth in Minn.Stat. § 550.04.

> Where the execution is against the personal property or money of the judgment debtor, it may be issued to the sheriff of any county from the district court where the judgment was originally docketed.

Minn.Stat. § 550.07. In turn,

> [t]he officer shall execute the writ against the property of the judgment debtor by levying upon the same, collecting the things in action, or selling the same if the court orders, ... and paying to the judgment creditor the proceeds, or so much thereof as will satisfy the execution.

Minn.Stat. § 550.08. Over a century ago, the Minnesota Supreme Court observed:

> Just what constitutes a levy frequently depends upon the facts in the case. The levy of an execution is the seizure by the officer of the debtor's property under the writ, and the taking possession of it or subjecting it to his control.

*Horgan v. Lyons,* 59 Minn. 217, 220, 60 N.W. 1099 (1894) (interior quotation marks and citation omitted). Under the current statute,

> [t]he sheriff may levy upon money or other indebtedness owed by a third party to the judgment debtor.... Upon receipt, ... the third party shall remit to the sheriff as much of the amount due [as specified under the writ of execution] as the third party's own debt equals.

Minn.Stat. § 550.135, Subd. 3.

Minnesota law empowers attorneys for judgment creditors to "execute on a money judgment by levying on indebtedness owed to the judgment debtor ..." Minn.Stat. § 551.01. This must be done under a writ of execution, *id.,* which is served upon the third party along with a notice of third-party levy and disclosure form. Minn. Stat. § 551.04, Subd. 4. Such third-party debts subject to attorney levy include

> ... all unpaid nonexempt disposable earnings owing or to be owed by the third party and earned or to be earned by the judgment debtor within the pay period in which the writ of execution is served and within all subsequent pay periods whose paydays occur within the 70 days after the date of service of the writ of execution.

Minn.Stat. § 551.04, Subd. 2(a).[7] For a levy on earnings owed to a judgment debtor, the statutory form for the notice of levy announces that the judgment creditor, contemporaneously with service of the notice, "levies execution upon all earnings due and owing by [the third-party employer] ... to the judgment debtor for the amount of the judgment specified." It then directs the

---

7. The amount of earnings subject to levy is limited by the provisions of Minn.Stat. § 551.06, Subd. 3. These limitations are not relevant here.

third-party employer to "mail ... [its] check payable to the ... judgment creditor, for the nonexempt amount owed by [it] to the judgment debtor or for which [it is] obligated to the judgment debtor," to the attorney effecting the levy. Minn.Stat. § 551.06, Subd. 9.

If the judgment debtor has unpaid earnings subject to the levy, the employer is required to make this remittance by check "within ten days after the last payday to occur within the 70 days after the date of the service of the writ of execution." Minn.Stat. § 551.06, Subd. 12.

This is all a process, a dynamic, through which a creditor collects on its judgment; legal rights attach, are seated, accrue in value over an extended period of time, move between parties, and ultimately come to fruition in the hands of the creditor through the realization of value in a fungible form. The state statute that establishes the process does not use either of the words "lien" or "transfer" to identify any aspect of any of its sequences. However, the interposition of the Debtor's bankruptcy filing, and the motion she has brought, require an analysis in that frame of reference. The question is whether a judgment creditor that has used an attorney levy on earnings holds a *lien* against nonexempt wages held by its debtor's employer before the remittance to the creditor, or whether it was the beneficiary of an absolute *transfer* of them, effected as a matter of law upon the service of a writ of execution on the employer holding the earnings.

In urging the former, the Debtor relies on *Murphy v. Casey*, 157 Minn. 1, 195 N.W. 627 (1923). In that case, the Minnesota Supreme Court held that the service of a writ of execution on a third party holding the personal property of a judg-ment debtor gives the judgment creditor "a lien on the personal property involved." 157 Minn. at 5, 195 N.W. at 629.

In response, First Select argues that the several-part statutory scheme for execution requires a distinction to be drawn, between "a levy upon earnings or money on deposit at a financial institution" and "a levy on personal or real property." Noting that the judgment debtor has no right of redemption from the former, First Select maintains that such "is complete and fully executed when service is made," making the funds "already transferred to the judgment creditor by the levy." On this rationale, it argues, *Murphy v. Casey* is distinguishable, because it "involve[d] levies on personal or real property which are subject to the redemption and sale process."

First Select's argument, however, cannot prevail.

In the first place, First Select's attempt to distinguish *Murphy v. Casey* is ill-founded. That case did indeed implicate the attachment of an execution lien on money, and a negotiable instrument, both in the hands of a third party via a fraudulent conveyance. 157 Minn. at 2, 195 N.W. at 628.[8] The *Murphy v. Casey* court clearly envisioned the initiation of levy as attaching a lien against the intangible forms of money, rights to payment, and negotiable instruments, as much as it saw that happening to tangible property that had to be reduced to cash by a sheriff's sale after seizure in levy. In the abstract, First Select's functionally-based theory is arguable; however, it contradicts binding precedent that is unequivocal, and the specific facts on which that ruling was made.

---

**8.** The third asset at issue in the case was a parcel of real estate, also conveyed in fraud.

*Id.* However, all three were the subject of the controversy in the appeal.

At another level, there is no way to harmonize the character of the particular asset and its place in the process of execution with several other provisions of Minnesota law, unless one characterizes the levying judgment creditor's interest in unearned earnings in the hands of an employer as a lien. This is a matter of applying basic principles, and with some abstruseness. However, in the end, the exercise preserves a seamless web where First Select's pitch does not.

An employee who is paid on a periodic basis accrues a right to payment from her employer during the time between paydays. Such an accruing debt is expressly included among the third-party obligations on which a judgment creditor may levy execution, under the authority cited previously.

By the very operation of the attorney levy statute, however, the underlying property right remains in the possession and immediate control of the employer after the initial attachment of the judgment creditor's rights. The amount subject to the attachment grows as the employee earns wages over the statutory period of the execution's effectiveness. Through such an operation over time, with effect that may vary with fluctuations in income, the attachment of a wage levy resembles a "floating lien" or a security interest that attaches via an after-acquired property clause, far more than it does an event of "transfer." The latter carries with it the connotation of a discrete passage of fixed and defined rights on a one-time occurrence. The essence of that is much different from an operation so extended over time as an attorney's execution on wages is.

With a logical extension of First Select's argument, and no more than a small one, one would expect that the "transfer" upon attorney levy would be complete in a trice, a passing of full right, title, and interest in the subject property right to the party making the execution. Clearly, that does not happen, either as a matter of fact or as a matter of law. As just noted, the employer retains control over the value withheld from its employee, subject to the judgment creditor's direction, until it has to make remittance. To use the classic law-school analogy for the legal character of property ownership, a significant number of sticks in the bundle passes to the judgment creditor, upon service of the writ of execution, but not all do. The judgment creditor makes a seizure of sorts, in the sense of taking some control over the withheld earnings, to the extent of withholding them from the employee-debtor. That action, however, need not extend to the full physical or fiscal control of the attached asset. *Horgan v. Lyons*, 59 Minn. at 220, 60 N.W. at 1099 (levying officer "may leave [the property] with a receiptor, or even with the debtor as his agent, or with a third party, subject to the officer's control . . .").

At a less theoretical level, there is the possibility of a misdirection of the attached funds, which invariably follows from the employer's retention of them, or the factual and legal prospect of competing claims to them. In an attorney levy on wages, the employer could exercise *de facto* control over the levied funds in a dispositive way to the detriment of the executing party thereafter, however unlawful that may be.[9] Further, until remittance, the judgment debtor's right to the unpaid and withheld wages remains subject to attach-

---

9. The Minnesota Legislature recognized this *de facto* control by providing for the imposition of liability on the employer or other third party, as a sanction for a failure "to disclose or remit the levied funds as required in . . . chapter" 551. Minn.Stat. § 551.04. Subd. 9.

ment by competing judgment creditors-and the sums withheld by an employer on an earlier-levying creditor's account could be subject to the claim of a later-levying one.[10]

All of these incidents of wages levied on but still in an employer's possession are common to those of a lien, and inconsistent with the notion of a transfer.

Then we have the language of the statute. As noted earlier, it does not use words so definitive as to immediately direct a conclusion either way. The omission of the word most helpful to First Select, however, is crucial. The statute does not expressly term the action of a levy on unpaid wages a "transfer"; instead, it uses the verb "attaches," Minn. Stat. § 551.04, Subd. 2, and the noun "attachment," Minn.Stat. § 551.04, Subd. 3. This vocabulary and concept denote something less than a full divestment of all right and interest in the subject asset. As such, they are more commonly associated with a "lien," which is defined as "a *hold or claim* which one person has *upon the property of another as security* for some debt or charge." *Atwater v. Manchester Savings Bank,* 45 Minn. 341, 346, 48 N.W. 187, 188 (1891) (Wm.Mitchell, J.). *See also* BLACK'S LAW DICTIONARY at 922 (6th Ed.1990) (defining "lien" as *"[q]ualified* right of property which a creditor has *in or over* specific property *of his debtor"* (emphasis added)).

Under a functional and definitional analysis, then, the categorization in *Murphy v. Casey* is as viable under the current statutory regime as it was under that of 1923.

■ One last aspect of the statutory scheme reinforces this conclusion. The statute contemplates that the judgment

creditor will make its realization through the vehicle of a check. Through that means, a full-fledged "transfer" attendant to wage levy does not take place until *after* the employer's remittance. Under Minnesota law, the mere issuance or tender of a drawer's check in payment on an obligation to a drawee does not work a passage of funds to the drawee. *Olsen–Frankman Livestock Marketing Serv., Inc. v. Citizens Nat'l Bank,* 4 B.R. 809, 813 (D.Minn.1980); *In re Ramy Seed Co.,* 57 B.R. 425, 429 (Bankr.D.Minn.1985). The transfer of funds takes place when the check is accepted and honored–i.e., when the drawer's bank moves funds from the drawer's account to the payee identified by the drawer. If we envision the employer-drawer's account as containing the withheld wages, pooled and commingled as they may be, but the employer being still under the suspended original obligation of payment to its employee, the transfer on account of an execution on wages occurs only when the employer's bank honors the check to the judgment creditor.

The sequence of events here had not reached that point at all. In the possession of the State of Minnesota on the date of the Debtor's bankruptcy filing, the wages withheld from her on First Select's levy were subject to a lien in favor of First Select. That lien was one "obtained by ... levy." First Select does not dispute that its existence impaired an exemption that the Debtor otherwise could have taken as to the funds. The Debtor's motion, therefore, must be granted.

### ORDER

IT IS THEREFORE DETERMINED AND ORDERED:

---

10. Minn.Stat. § 551.06, Subd. 4, establishes the rules for determining the priority of levying creditors' claims in just such an instance, in a way corollary to those for security interests. *See* Minn.Stat. § 336.9–322.

1. On August 3, 2002, the date of the Debtor's bankruptcy filing, First Select, Inc., held a judicial lien within the scope of 11 U.S.C. §§ 101(32) and 522(f)(1)(A) against the sum of $452.09, then in the possession of the State of Minnesota as the Debtor's employer, under a prior levy of execution in favor of First Select, Inc.

2. The existence of the lien described in Term 1 impaired an exemption in the subject funds, to which the Debtor would have been entitled in this case absent the existence of the lien.

3. The lien, therefore, is avoided.

4. To effectuate this avoidance, First Select shall pay the sum of $452.09 to the Debtor, forthwith.