In re Samuel Jeffrey HOWARD and Julie Marie Howard, Debtors.

No. 03–31696.

United States Bankruptcy Court, D. Minnesota.

April 6, 2004.

G. Martin Johnson, G. Martin Johnson Ltd., Bloomington, MN, for Debtors.

ORDER RE: DEBTORS' MOTION FOR AVOIDANCE OF JUDICIAL LIEN

GREGORY F. KISHEL, Chief Judge.

This Chapter 7 case came on before the Court for hearing on the Debtors' motion for lien avoidance under 11 U.S.C. § 522(f)(1). The Debtors appeared by their attorney, G. Martin Johnson. Wells Fargo Bank, N.A. ("Wells Fargo") ap-

peared by its attorney, Derrick N. Weber. Upon the moving and responsive documents and the arguments of counsel, the Court memorializes the following decision pursuant to Fed.R.Civ.P. 52(a) and Fed. R. Bankr.P. 9014.

## FACTS

The facts relevant to this motion are uncontested. The underlying events all occurred in the context of legal proceedings, in this Court and another.

On January 17, 2003, Wells Fargo obtained a judgment in the amount of $3,012.17 against Debtor Julie Marie Howard in the Minnesota State District Court for the First Judicial District, Scott County. Wells Fargo's counsel then obtained a writ of execution from the Scott County District Court.

In February, 2003, the Debtors maintained a bank account at Community Bank of Minnesota Valley in Jordan, Minnesota. On February 18, 2003, Wells Fargo's counsel used the writ of execution to levy on the funds on deposit in this account pursuant to Minn.Stat. § 551.05.[1] Shortly after that, the Debtors served a notice on Wells Fargo's counsel pursuant to Minn.Stat. § 551.05, Subd. 2, to claim the balance in the account as the deposited proceeds of wages earned by Julie Howard from February 1 to February 14, 2003, pursuant to section (10) of that form.

On February 24, 2003, Wells Fargo's counsel filed an objection to the claim of exemption with the Scott County District Court. Counsel served the objection on Julie Howard and also sent her a form pursuant to Minn.Stat. § 551.05, Subd. 6, through which she could request a hearing on the contested claim of exemption. Julie Howard did not file the Request for Hearing document with the state court.

On March 10, 2003, the Debtors filed their voluntary petition under Chapter 7. On their Schedule C, they elected the exemptions available under 11 U.S.C. § 522(d). Under the assets they claimed as exempt under § 522(d)(5) was the following recitation:

| Description of Property | Value of Claimed Exemption | Current Market Value of Property, Without Deducting Exemptions |
|---|---|---|
| Exempt Wages— $1,050.00 subject to levy by Wells Fargo, c/o Messerli & Kramer; held by Community Bank of Jordan | $1,050.00 | $1,050.00 |

No creditor or party in interest objected to this claim of exemption.

On March 11, 2003, the Debtors' counsel sent a letter to Wells Fargo's counsel by facsimile transmission. In it, he advised of the Debtors' bankruptcy filing and requested:

> Please cease all collection activities including, but not limited to garnishments on behalf of Wells Fargo Bank. Please notify Community State Bank accord-

1. The statute uses the phrase "attorney's summary execution" to denote the procedure of attachment. The more familiar term "levy" will be used for the remainder of this decision, in its traditional sense of a "seizure ... of the debtor's property under the writ ..." *Horgan v. Lyons*, 59 Minn. 217, 220, 60 N.W. 1099 (1894).

ingly and notify our office when that has taken place.

On the same date, Wells Fargo's counsel sent a letter to Community Bank Minnesota Valley via fax. In it, he notified the Bank of the Debtors' bankruptcy filing and requested the Bank to release all funds then held pursuant to the levy—those "withheld prior to March 10th, 2003" to Wells Fargo's counsel and those "withheld on or after March 10th, 2003" to the Debtors.

Community Bank's counsel then contacted Wells Fargo's counsel to advise that his client wished "to forward the levied funds to the Bankruptcy Court." Via a letter dated March 12, 2003, Wells Fargo's counsel objected to that disposition. He maintained that the prepetition levy worked a "transfer" of the subject funds to Wells Fargo, which entitled Wells Fargo to a remittance of them from Community Bank after the expiration of the statutory period for Julie Howard to demand a hearing. He insisted that, due to the occurrence of a transfer, there was no violation of the automatic stay in its demand for the remittance, and there would be none when it actually received the funds.

On March 12, 2003, counsel for the Debtors and Wells Fargo exchanged letters via fax. The Debtors' counsel demanded that Wells Fargo release the funds under penalty of a motion for sanctions for violation of the automatic stay; Wells Fargo's counsel repeated his position that the Debtors no longer had a property interest in the funds and that their right to recover them lay only in a derivative action for avoidance of a preferential transfer, if at all.[2]

Apparently the matter then lay dormant for more than five months; the Bank continued to segregate and hold the funds and the parties' counsel continued their impasse. On June 17, 2003, the Debtors were granted a discharge under Chapter 7. On August 29, 2003, the Debtors' counsel sent Wells Fargo's counsel a copy of *In re McGovern*, 295 B.R. 897 (Bankr.D.Minn. 2003), arguing that its holding amounted to a rejection of Wells Fargo's position on their clients' dispute. He offered to "drop [the Debtors'] request for sanctions" if Wells Fargo immediately consented to Community Bank releasing the funds. Wells Fargo's counsel replied via a September 3, 2003 letter, summarily stating:

> Judge Kishel's opinion in *In re McGovern* is non-binding. Our client stands on the authority of current Appellate law and case law.

He also reprised Wells Fargo's previous position, in even more detail, that the levy had worked a transfer; that accordingly the automatic stay was not implicated upon the Debtors' bankruptcy filing; that Wells Fargo had no obligation to pay over the funds absent an avoidance of that transfer; and that Wells Fargo would contest the Debtors' case on the insolvency element of § 547(b)(3) if the Debtors took that route to try to recover from Wells Fargo. This was the last communication before the Debtors brought the motion at bar. Community Bank continues to hold the funds.

## DISCUSSION

### 1. The Debtors' Motion for Lien Avoidance.

■ The Debtors styled the substantive portion of the matter at bar under 11

---

**2.** Wells Fargo's counsel cited only 11 U.S.C. § 547(b) in this statement of position. Apparently he was referring to the remedies under 11 U.S.C. §§ 522(g)–(i). E.g., *In re James*, 257 B.R. 673, 675 (8th Cir. BAP 2001); *In re Wade*, 219 B.R. 815, 819 (8th Cir. BAP 1998); *In re Klingbeil*, 119 B.R. 178, 181 (Bankr. D.Minn.1990).

U.S.C. § 522(f)(1).[3] Their theory is that Wells Fargo's levy on the funds on deposit in their bank account gave rise to a "judicial lien" within the scope of 11 U.S.C. § 101(36),[4] which was still in place as of the date on which they filed for bankruptcy. They note that, for this case, they would have been allowed an exemption in the value encumbered by the lien, had the lien not attached. Finally, they maintain that the existence of the lien impaired that exemption. For the analysis of the parties' posture under state law, the Debtors' counsel relies entirely on *In re McGovern;* he characterizes that decision as "deal[ing] with the virtually identical issue." He argues that the facts at bar present only one, nonmaterial difference from those in *McGovern: McGovern* involved an attorney levy pursuant to Minn.Stat. § 551.05, made on wages held by an employer before payment to the debtor there, and this case involves an attorney levy pursuant to Minn.Stat. § 551.06, made on funds on deposit that are traceable to paid wages that had been subject to statutory exemption.

For its part, Wells Fargo relies exclusively on its theory that the levy worked an outright transfer to it, to the end that "the Debtors have no interest in the seized property to claim as exempt." As Wells Fargo's counsel would have it, this relegates the Debtors to the remedy of avoidance of a transfer under § 522(h), which would require them to satisfy 11 U.S.C. § 547(b) and to litigate via adversary proceeding rather than by motion.[5]

In broad contours, this case looks like *McGovern:* a judgment creditor used an attorney levy under Minnesota statute to attach monies owing by a third party to its judgment debtor; the monies remained in the possession of the third party when the judgment debtor filed for bankruptcy, claimed an exemption for the value of the monies attached, and then sought to divest the judgment creditor's rights by a lien avoidance. In *McGovern,* the subject funds were wages owing to the debtor but unpaid, in the possession of the employer when the debtor filed for bankruptcy. The posture of debtor's and creditor's rights in light of the levy, under applicable statute and in the status of procedures under it, led to *McGovern's* holding: the judgment creditor's right in the funds before the employer had actually remitted them was a lien, and not outright ownership conferred by a transfer. 295 B.R. at 900–904.[6]

Here, the property in question was funds on deposit in the Debtors' account, which are subject to attachment via Minn. Stat. § 551.04, Subd. 2(b).[7] Under the

---

3. In pertinent part, this statute provides:
   . . .the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under [11 U.S.C. § 522(b)], if such lien is—
      (A) a judicial lien, . . .

4. This statute defines "judicial lien" as "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding. . .''

5. Wells Fargo's counsel also summarily argues that a proceeding for avoidance of transfer would now be time-barred under 11

U.S.C. § 546(a). Beyond a bare quotation of that statute, he does not develop this argument. The statute does not refer to matters under §§ 522(g)–(i) among the remedies that are subject to its statute of limitations. The argument is a waste of time.

6. And, because that lien had been conferred by a levy, it was a "judicial lien" within the ambit of the right of avoidance given by § 522(f)(1). 295 B.R. at 904.

7. This statute identifies the following property:

   All other nonexempt indebtedness or money due or belonging to the judgment debtor

holding in *Murphy v. Casey*, 157 Minn. 1, 5, 195 N.W. 627, 629 (1923), the service of the writ of execution on Community Bank affixed a lien on those funds. As noted in *McGovern*, 295 B.R. at 904, *Murphy v. Casey* is still good law, never overruled by the Minnesota Supreme Court and as viable under Minnesota's current statutory scheme of creditors' remedies as it was under that of 1923.

The one difference between attorney levy on wages and attorney levy on bank deposits does not undermine the functional and definitional analysis of *McGovern*. Minn.Stat. § 551.04, Subd. 2(a) subjects to attorney levy not only wages owed a judgment debtor as of the date of the levy, but those "to be earned ... within all subsequent pay periods whose paydays occur within the 70 days after the date of service of the writ ..." This creates something very much like a floating lien or a security interest attachable under an after-acquired property clause. *In re McGovern*, 295 B.R. at 903. To a different effect, the language of Minn.Stat. § 551.04, Subd. 2(b) does not contemplate any continuing process of attachment, to later-deposited funds. It brings about a one-time affixing of a lien, to whatever was on deposit as of the date of levy and nothing else.

Insofar as the basic alteration of property rights, however, the distinction is without a difference. The one is analogous to a floating lien, the other to a static lien. Both, however, amount to a passage of only a portion of the figurative "bundle of sticks" of property ownership, and not the whole thing. *In re McGovern*, 295 B.R. at 903.

Thus, a lien attached when Wells Fargo's counsel served Community Bank with the writ of execution. That lien was never extinguished, because the funds remained in Community Bank's control until now. Only a remittance from Community Bank to Wells Fargo, and the honoring of the check given in remittance, would have worked an actual "transfer" of the funds; only then would the lien have been extinguished. *In re McGovern*, 295 B.R. at 904.[8]

Because the lien was in existence when the Debtors filed for bankruptcy, it is subject to § 522(f). Because it does impair an exemption to which Julie Howard would have been entitled-the Debtors' Schedule C shows that she had enough unapplied value under the "pour-over" exemption of § 522(d)(5) to cover the funds—the Debtors' motion must be granted.

### 2. The Debtors' Motion for Sanctions.

The Debtors also requested an order "[a]warding attorneys fees and costs for [Wells Fargo's] willful violation of the automatic stay." Their counsel does not

and owing by the third party or in the possession or under the control of the third party at the time of service of the writ of execution, whether or not the same has become payable.

**8.** In a toss-off reference in his brief, Wells Fargo's counsel cited *In re James*, 257 B.R. 673 (8th Cir. BAP 2001) for the proposition that "on the date that the levy was served ... the [Debtors] parted with their interest in this property, albeit involuntarily." The citation is inapposite, because the Bankruptcy Appellate Panel was applying the *Arkansas* state law of garnishment. Under Arkansas law,

"service of the writ of garnishment creates a continuing lien in favor of the garnisher," 257 B.R. at 678, which then is extinguished upon the entry of a judgment that directs the third-party garnishee to pay the attached funds to the garnisher, 257 B.R. at 679. The B.A.P. held that the entry of that judgment works a transfer, because it "terminates the employee's interest in the garnished wages." *Id.* Minnesota law does not provide for such a signal event to establish the transfer, which in *McGovern* was defined with reference to the law of negotiable instruments. 295 B.R. at 904.

treat this request any too thoroughly in his briefing; he cites 11 U.S.C. § 524 as the source of an injunction that prohibits "continuation of collection activities" and he accuses Wells Fargo, "through its counsel, by refusing to release its levy, [of] doing just that."

The terseness of this presentation leaves it unclear as to whether the Debtors are complaining of a violation of 11 U.S.C. § 362(a) or one of § 524(a). Most charitably, their position is construed as going to both. Wells Fargo's refusal to undo its attachment began when the automatic stay was in place,[9] and continued long after it was replaced with the discharge injunction.[10]

■ 11 U.S.C. § 362(h) gives individual debtors a remedy for a creditor's deliberate and knowing violation of § 362(a).[11] *In re Knaus*, 889 F.2d 773, 776 (8th Cir. 1989). Once discharge is granted, a creditor that proceeds in collection on a discharged debt, knowing of the grant of discharge, may be found in civil contempt of the discharge injunction. This can lead to the imposition of a penalty that is remedial in nature, i.e., structured to compensate the complaining party. *Hubbard v. Fleet Mortgage Co.*, 810 F.2d 778, 781 (8th Cir.1987); *In re Atkins*, 176 B.R. 998, 1009–1010 (Bankr.D.Minn.1994); *In re Bowen*, 89 B.R. 800, 807 (Bankr.D.Minn. 1988).

■ The core of the Debtors' argument on the issue of sanctions is that throughout the mounting of this dispute Wells Fargo's counsel simply ignored the existence of *McGovern* and its reasoning, insisting that the Debtors had to litigate the matter anew and relying only on an argument that had been rejected in *McGovern*. Thus, the Debtors' counsel suggests, by rejecting *sub silentio* a prior decision's theory that "controls as well" the matter at bar, Wells Fargo and its counsel were withholding the benefit of the law from them in an attempt to collect on a debt that was subject to discharge and that was in fact discharged.

It is not easy to treat this argument in a straightforward fashion, in part because of

9. 11 U.S.C. §§ 362(a)(2) and (6) create a stay of "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under [the Bankruptcy Code] ..." and "any act to collect, ... or recover a claim against the debtor that arose before the commencement of the case ..."

10. In general,
> ... the stay of any other act under [11 U.S.C. § 362](a) ... continues until ...
>> ...
>> ... if the case is a case under chapter 7 of [the Bankruptcy Code] concerning an individual... the time a discharge is granted or denied.

11 U.S.C. § 362(c)(2)(c). In turn,
> ... [a] discharge in a case under [the Bankruptcy Code]—
>> ...
>> ... operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived ...

11 U.S.C. § 524(a)(2).

11. Section 362(h) provides as follows:
> (h) An individual injured by any willful violation of a stay provided by [§ 362] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

The Eighth Circuit has also recognized that "§ 362(a), buttressed by § 105(a), confers broad equitable power to remedy adverse effects of automatic stay violations." *In re Just Brakes Corp. Systs., Inc.*, 108 F.3d 881, 885 (8th Cir.1997). This pronouncement was made in the case of a corporate debtor, for which the Circuit recognized that § 362(h) was not available. 108 F.3d at 884. Because the specific statutory remedy is available here, judicial restraint dictates that the broader equitable power be left at rest.

the obtuseness of Wells Fargo's response. If Wells Fargo's counsel had not dismissed *McGovern* out of hand, their client could have credibly maintained that it had the right to hang on to its lien, at least until it was proven that the lien was not viable. This position would have lasted defensibly only until the merits of the Debtors' position ripened,[12] but it would have gone until then.

After that, though—once it was clear under *McGovern* that Wells Fargo was a judicial lienholder and not a transferee, and once the Debtors unquestionably had § 522(f)(1) available to them—it was incumbent on Wells Fargo to do the right thing, to follow the law, and to avoid the needless piling of the transactional costs of litigation on itself and its former customers.

This, of course, did not happen. Had Wells Fargo's tack been to argue the materiality of a distinction between the two sorts of attorney levy, its intransigence would have been more justified. It would have not been out of bounds to test the application of *McGovern's* theory to a variant situation, or to set up a general challenge to *McGovern* on appeal from an adverse ruling here. Absent other history, even the strategy that counsel did pursue would not have been entirely inappropriate; *McGovern* was indeed "non-binding" in the sense that it was not rendered by an appellate court with the power to make precedent, as much as it was a prediction of the assigned judge's approach.

However, there was that history. Wells Fargo's counsel had made the same argument before, in a case before the undersigned and on behalf of a different client. They lost on the very rationale now formally articulated here. The debtor's motion was granted in that case.[13] The creditor in that case did not take an appeal from the ruling.

The law firm that is representing Wells Fargo has a substantial practice in collecting consumer debts. The issue at bar clearly is one that will regularly reappear in their work. The records of this Court suggest their plan to fight this issue. If the strategy is evaluated in light of the attorney's duty of zealous advocacy, there is a small rationalization for putting an opponent to its burden of proof and demanding a show of the legal merits, where the issue is yet unsettled by appellate precedent. However, when the issue frequently arises, involves a small amount in controversy in any particular case, and is posed by an opponent that has few resources for litigation, a larger problem emerges. Refusing to appeal adverse rulings, but forcing the next opponent through the paces on the very same issue, emerges in a new light: it evidences a hard-bitten and passive-aggressive obstructionism, advanced in an attempt to cow and deter underfunded opponents. Ultimately it is cynical in its attitude toward the fabric of the law, and mean-spirited.

When an attorney has a stable of clients with a common and recurring issue in a

12. This would have been after the expiration of the period under Fed. R. Bankr.P. 4003(b) for objection to claims of exemptions. Once that deadline passed, the configuration of the Debtors' potential rights fixed, the availability of the "pour-over" exemption of § 522(d)(5) was certain, and the extent to their derivative right to lien avoidance was clear. *In re Hahn*, 60 B.R. 69, 73 (Bankr.D.Minn.1986)

(lien avoidance provisions of § 522(f) use debtor's exemption rights as "yardstick," to "define the outer boundaries of [the] right to avoid certain types of prepetition liens ...").

13. *In re Larson*, BKY 03–50272. On June 24, 2003, the Court memorialized a decision on the record and entered an order granting the motion of the debtor in that case.

single forum, and suffers a negative ruling that will impact across that clientele, the professional and broadly-responsible thing to do is to get the issue resolved conclusively. This could be done either by deferring to the trial court's ruling, advising clients on future matters accordingly, or by seeking vindication in an appellate forum. It is not responsible, however, to sit back, to disagree with the early ruling in principle, but then to force litigation by raising an identical boilerplate defense in each future matter. That creates unnecessary transactional costs of litigation for all parties. In a broader way, it imposes additional burdens in case administration on the courts and it frustrates the growth of the law as an embodiment of just principles.

For the purposes of the Debtors' request for sanctions, Wells Fargo's counsel must be deemed to have acquiesced in the construction applied in *In re Larson*. It was utterly foreseeable that the issue would come up again, given *McGovern's* published status. Wells Fargo's counsel had full opportunity to take a run at the theory of *McGovern* on appeal from the order in *Larson*. They did not take it. They and their current client cannot be given the benefit of a long-term strategy that otherwise will multiply the undesirable effects just described.

The consequence of that deemed acquiescence is that Wells Fargo violated the automatic stay, and then the discharge injunction, by continuing its attempt to collect on a prepetition debt under color of a lien that had no legal vitality in the wake of the Debtors' bankruptcy filing. The violation of the automatic stay began as soon as the Debtors' hypothetical right to exempt the subject funds became fixed, 30 days after the meeting of creditors. Fed. R. Bankr.P. 4003(b). It persisted to the argument of this motion.

Section 362(h) prescribes the sanctions for a willful violation of the automatic stay. The willfulness here is manifested by the vexatious quality of the creditor's litigation strategy, designed to bring about a zero-sum Pyrrhic victory by the opponent if nothing else. The imposition of sanctions under § 362(h) therefore is merited. The only sanction that the Debtors request is an award of the attorney fees they incurred in bringing this matter. The statute allows that, in a reasonable amount.

The same form of sanction is properly imposed for a violation of the discharge injunction, which is subject to punishment as a civil contempt of court under the authorities previously cited.

All things considered, it is appropriate to impose that sanction as to both component violations. The Debtors would have not incurred the basic cost of bringing their motion, nor the enhanced burden of replying to Wells Fargo's response and having counsel argue at hearing, had Wells Fargo not engaged in its counsel's litigation strategy. There is no record before the Court to determine the amount of a reasonable attorney fee at present, but the Debtors' counsel will have the opportunity to make one.

## ORDER

IT IS THEREFORE DETERMINED AND ORDERED:

1. On March 10, 2003, the date of the Debtors' bankruptcy filing, Wells Fargo Bank, N.A. held a judicial lien within the scope of 11 U.S.C. §§ 101(36) and 522(f)(1)(A) against the sum of $1,050.00, then on deposit in the Debtors' account at Community Bank Minnesota Valley, Jordan, Minnesota.

2. The existence of the lien described in Term 1 impaired an exemption in the subject funds, to which the Debtors would

have been entitled in this case absent the existence of the lien.

3. The lien, therefore, is avoided, and the attachment of the funds is released.

4. To the extent that Community Bank Minnesota Valley still holds the funds on deposit, it shall release them to the Debtors. To the extent that it has released the funds to Wells Fargo Bank, N.A., Wells Fargo Bank, N.A., shall pay the Debtors the sum of $1,050.00, forthwith.

5. No later than *April 21, 2004,* the Debtors' counsel shall serve and file an unsworn declaration setting forth a recap of all costs and attorney fees his clients have incurred in connection with this motion, in the format and with the detail contemplated by Loc. R. Bankr.P. 2016–1. After that, the Court will determine the amount of a reasonable attorney fee to be awarded to the Debtors, and will enter an order requiring the payment of that award by Wells Fargo.