TAP PHARMACEUTICAL PRODUCTS INC., d/b/a Pharmacy Solutions, Respondent,

v.

STATE BOARD OF PHARMACY, Appellant.

No. SC 88318.

Supreme Court of Missouri, En Banc.

Nov. 20, 2007.

Jeremiah W. (Jay) Nixon, Atty. Gen., James R. Layton, State Solicitor, Stacy E. Yeung, Asst. Atty. Gen., William Vanderpool, Asst. Atty. Gen., Jefferson City, MO, for Appellant.

Morgan R. Hirst, Jones Day, Chicago, Ill., Duane E. Schreimann, Michael J. Schmid, Jefferson City, MO, for Respondent.

WILLIAM RAY PRICE, JR., Judge.

## I.  Introduction

TAP Pharmaceutical Products Inc., d/b/a Pharmacy Solutions, seeks review of a Board of Pharmacy decision placing TAP's pharmacy permit on probation for three years. The Board's action, however, is barred by a settlement agreement that TAP entered into with the State of Missouri. Pursuant to Rule 84.14, the trial court judgment is vacated and the Board's order is reversed.

## II.  Facts

In September 2001, TAP agreed to plead guilty to the offense of conspiracy to violate the Prescription Drug Marketing Act, 21 U.S.C. sections 331(t) and 333(b). Specifically, TAP provided free samples of the drug Lupron to physicians with the expectation that those samples would be prescribed to patients and then illegally billed to the Medicaid program. The United States District Court for the District of

Massachusetts accepted TAP's guilty plea on December 6, 2001.

TAP and the State of Missouri entered into a Settlement Agreement and Release ("Agreement") on December 3, 2001. Under the terms of the Agreement, TAP paid the state $1,827,331.90. In exchange, the state agreed to release TAP from specified claims arising from the conduct underlying the guilty plea. TAP executed a similar agreement with all other states and the federal government.

Thereafter, the attorney for the Missouri Board of Pharmacy ("Board") filed a felony conviction complaint with the Board pursuant to section 338.065,[1] which allows for discipline of a pharmacy permit if:

> [A] licensee ... has entered a plea of guilty ... in a felony prosecution pursuant to ... the laws of the United States of America for any offense reasonably related to the qualifications, functions or duties of a licensee ... or any felony offense, an essential element of which is fraud, dishonesty or an act of violence, or for any offense involving moral turpitude....

The Board sought to impose discipline against TAP's pharmacy permit based on the 2001 guilty plea.[2] The Board held a disciplinary hearing, issued its findings, and ordered TAP's pharmacy permit placed on probation for three years. TAP filed a petition for review in the circuit court, which reversed the Board's decision and remanded the case to the Board.

## III.  Standard of Review

In an appeal following judicial review of an agency's administrative action, this Court reviews the decision of the agency, not the circuit court. *Mo. Coalition for the Environment v. Herrmann,*

---

1. All statutory references are to RSMo 2000, unless otherwise noted.

2. To date, Missouri is the only state to undertake such action.

142 S.W.3d 700, 701 (Mo. banc 2004). Pursuant to section 536.140.2, this Court reviews to determine "whether the agency's findings are supported by competent and substantial evidence on the record as a whole; whether the decision is arbitrary, capricious, unreasonable or involves an abuse of discretion; or whether the decision is unauthorized by law." *Community Bancshares, Inc. v. Secretary of State,* 43 S.W.3d 821, 823 (Mo. banc 2001).

## IV. Arguments

TAP challenges the Board's determination on two fronts. First, it argues that the Board's actions did not comport with due process because TAP received an insufficient hearing and the Board was not a fair and impartial tribunal. Second, TAP points to three provisions in the Agreement that it argues bar the Board from instituting the action in question. Those provisions provide:

### TERMS AND CONDITIONS

- Paragraph 2: "In consideration of this Agreement and payment set forth herein and subject to the exceptions from release set forth in Paragraph 3 below, **the state of Missouri on behalf of itself, its officers, agents, agencies and departments shall release and forever discharge TAP, its predecessors, subsidiaries, joint venture owners, and their corporate parents and affiliates, successors and assigns, and their current and former directors, officers, and employees from any civil or administrative claims for damages or penalties that the state of Missouri has or may have relating to the Covered Conduct** as defined in Preamble Paragraph F. The payment of the Settlement Amount fully discharges TAP from any obligation to pay Medicaid-related restitution, damages, and/or any fine or penalty to the State for the Covered Conduct." (emphasis added)

- Paragraph 4: "In consideration of the obligations of TAP set forth in this Agreement, conditioned upon TAP's payment in full of the Settlement Amount and except as reserved in paragraph 3 above, **the state of Missouri agrees to release and refrain from instituting, directing or maintaining any administrative claim or any action seeking exclusions from the state of Missouri's Medicaid program against TAP, its predecessors, subsidiaries, joint venture owners, their corporate parents and affiliates, successors and assigns, for the Covered Conduct or for TAP's conviction in the Criminal Action.** Nothing in this Agreement precludes the state of Missouri from taking action against TAP in the event that TAP is excluded by the federal government, or for conduct and practices other than the Covered Conduct or the conviction in the Criminal Action. The Medicaid Fraud Control Unit for the state of Missouri further agrees to refrain from recommending, causing or attempting to cause any administrative action or sanction, including debarment, by any other government agency of the state of Missouri for the Covered Conduct or for the conviction in the Criminal Action. TAP acknowledges that the state of Missouri does not have the authority to release TAP from any claims or actions which may be asserted by private payors or insurers, including those that are paid on a capitated basis for providing health care to the States' Medicaid programs." (emphasis added)

- Paragraph 5: "This Agreement is expressly conditioned upon resolution of the Criminal Action. In consideration of the Criminal Action, **the state of Missouri agrees that it shall not investigate, prosecute, or refer for prosecution or investigation to any agency, TAP, its predecessors, subsidiaries, joint venture owners, and their corporate parents and affiliates, successors and assigns for the Covered Conduct.**" (emphasis added)

The Board notes that these provisions are modified by Paragraph 3, which states in pertinent part that:

- Missouri specifically does not herein release TAP from ... any and all of the following ... (f) except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs.

Because this dispute can be resolved based on Paragraphs 2 and 4 of the Agreement, TAP's other arguments are not addressed.

## V. Analysis

### A.

■■■ Missouri courts treat a settlement agreement as a contract between the parties. *Andes v. Albano*, 853 S.W.2d 936, 941 (Mo. banc 1993). As a result, normal canons of contract construction apply. Chief among those canons is that the court first looks to the plain language of the agreement. *Id.* If that language clearly addresses the matter at issue, the inquiry ends. However, if the language is not clear, the court turns to other tools of construction in an attempt to determine the intent of the parties. *Id.* When making that determination, courts will consider language in the context of the entire contract, as well as "the relationship of the parties, the subject matter of the contract ... the practical construction the parties

themselves have placed on the contract by their acts and deeds, and other external circumstances that cast light on the intent of the parties." *Royal Banks of Missouri v. Fridkin*, 819 S.W.2d 359, 362 (Mo. banc 1991).

### B.

The Agreement does not contain the words "discipline," "license," "pharmacy permit" or the like regarding the proposed probation of TAP's pharmacy permit. This dispute probably would not have arisen had it done so. However, the language of Paragraphs 2 and 4, and the Agreement as a whole, is sufficiently clear to resolve this matter in TAP's favor.

### C.

■■■ The key language of Paragraph 2 of the Agreement provides that "the state of Missouri ... shall release and forever discharge TAP ... from any civil or **administrative claims for damages or penalties.**" (emphasis added). Numerous Missouri cases have used the phrase "penalty" to describe licensure discipline imposed by the Board and other administrative bodies. *See Tadrus v. Missouri Bd. of Pharmacy*, 849 S.W.2d 222, 228 (Mo. App.1993) (suspension of pharmacy license is "penalty" left largely to the discretion of the Board); *Dunning v. Bd. of Pharmacy*, 630 S.W.2d 155, 157 (Mo.App.1982) (Board moderated Administrative Hearing Commission's recommended "penalty" of revocation of pharmacy license); *Orion Security, Inc. v. Bd. of Police Comm'rs of Kansas City*, 90 S.W.3d 157, 163, 167 (Mo. App.2002) (frequently referring to licensure suspension or revocation as a "penalty").

The state notes that this Court has held that licensure discipline is remedial rather than penal in nature. *Younge v. State Board of Registration for the Healing*

*Arts,* 451 S.W.2d 346, 349 (Mo.1969), *cert. denied,* 397 U.S. 922, 90 S.Ct. 910, 25 L.Ed.2d 102 (1970). The state argues that because licensure discipline is remedial rather than penal, it cannot be a penalty covered under the terms of the Agreement. This line of reasoning misses the mark. The word "penalty" is often used in a broader context to include both penal and remedial acts. *See In re Caranchini,* 956 S.W.2d 910, 914 (Mo. banc 1997); *State v. Kelly,* 631 N.W.2d 167, 172–73 (N.D. 2001); *In re Howard,* 307 B.R. 659, 664 (Bankr.D.Minn.2004). A similar analysis applies here. Pharmacy licensure discipline is primarily remedial in nature. However, that characterization does not preclude the Board's actions from being described as a penalty.

### D.

In addition to the language in Paragraph 2, licensure discipline is also prohibited by Paragraph 4 of the Agreement, which states in pertinent part that:

> Missouri agrees to release and refrain from instituting, directing or maintaining **any administrative claim or any action seeking exclusions from the state of Missouri's Medicaid program against TAP ... for the Covered Conduct** or for TAP's conviction in the Criminal Action. (emphasis added)

TAP argues that this language releases all administrative claims arising from the covered conduct, while the state argues that this language only refers to administrative claims attempting to exclude TAP from Missouri's Medicaid program.

■ The key to the meaning of the sentence is the use of the disjunctive "or" to separate the "administrative claim" language from the Medicaid program language. The use of the term "or" generally refers to alternative possibilities and is akin to use of the word "either." *Council*

*Plaza Redevelopment Corp. v. Duffey,* 439 S.W.2d 526, 532 (Mo. banc 1969). In this context, Paragraph 4 releases (1) any administrative claims related to the covered conduct *or* (2) any action seeking exclusion from Missouri's Medicaid program based on the covered conduct.

The state's interpretation would violate a cardinal rule of contract construction by rendering a portion of the Agreement superfluous. *State ex rel. Riverside Pipeline Co., L.P. v. Public Service Com'n,* 215 S.W.3d 76, 84 (Mo. banc 2007). Specifically, if the "any administrative claim" language refers only to actions related to Missouri's Medicaid program, then that language is superfluous because those claims would already be covered under the "any action" portion of the sentence.

### E.

The state counters that reading Paragraphs 2 and 4 in the above manner would make the language in Paragraph 3(f) of the Agreement superfluous. That Paragraph provides:

> Missouri specifically does not herein release TAP ... from any and all of the following ... (f) except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs.

If Paragraphs 2 and 4 are read to broadly waive administrative claims then, the state argues, the language in Paragraph 3(f) serves no purpose.

This argument misconstrues the interplay between Paragraph 3 and Paragraphs 2 and 4. Paragraphs 2 and 4 explicitly release administrative claims arising from *the covered conduct.* Reading the Agreement as a whole, it is clear that TAP is seeking to resolve issues regarding the covered conduct and paid a significant sum of money to do so. On the other hand, the

language of Paragraph 3(f) makes clear that any administrative claims for other past or future conduct are still available. Paragraph 3 serves to prevent the Agreement from being read as a blanket release of actions against TAP for conduct unrelated to its specific criminal conduct.

## VI.   Conclusion

The Board's actions against TAP are barred by the language of Paragraphs 2 and 4 of the Agreement and therefore unauthorized by law.   Section 536.140.2. The judgment is vacated, and the Board's order is reversed.   Rule 84.14.

LAURA DENVIR STITH, C.J., TEITELMAN, LIMBAUGH, RUSSELL and WOLFF, JJ., and BARNEY, Sp.J., concur.

BRECKENRIDGE, J., not participating.